30 F.3d 1443
 Bankr. L. Rep. P 76,063
In re Thomas Edward COGGIN, Debtor.
Phyllis B. COGGIN, Plaintiff-Appellee,
v.
Thomas Edward COGGIN,
Defendant-Cross-Plaintiff-Appellant-Cross-Appellee,
Thomas E. Reynolds, Trustee-Cross-Defendant-Appellee-Cross-Appellant.
 No. 93-6914.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 8, 1994.
 
 J.N. Holt, Birmingham, AL, for appellant.
 Thomas E. Reynolds, pro se.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before BIRCH and CARNES, Circuit Judges and MORENO*, District Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This case requires us to untangle a knot that each party has played a role in tying. The appellant and debtor in the underlying bankruptcy case, Thomas Edward Coggin ("Coggin"), appeals the district court's affirmance of the decision of the bankruptcy court. The bankruptcy court held that it had jurisdiction over the challenges to Coggin's discharge. The challenges were filed after the statutorily mandated date by the appellees, Phyllis B. Coggin ("Mrs. Coggin"), a creditor and Coggin's ex-wife, and Thomas E. Reynolds (the "trustee"). Coggin argues that the appellees' motions to extend the time for filing such challenges to his discharge were not timely made and, therefore, should not have been granted. Coggin also challenges the bankruptcy court's denial of his discharge. The trustee cross appeals the bankruptcy court's determination that the value of Coggin's avoidable conveyance to his son, Tommy, is not recoverable by the estate from Coggin himself. We affirm the bankruptcy and district court decisions in all respects.
 
 I. BACKGROUND
 
 2
 On April 25, 1989, Coggin filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Alabama. The bankruptcy court set the section 341[1] hearing for June 5, 1989, and fixed August 4, 1989 as the last day for filing a complaint objecting to Coggin's discharge under section 727 or 523 (the "bar date"). On July 28, 1989, the trustee filed a motion to extend the bar date, pursuant to Federal Rule of Bankruptcy Procedure 4004(b),[2] and the bankruptcy court granted the motion the same day without notice or a hearing being granted Coggin. The trustee did not serve either Coggin or his attorney with the motion. A copy of the order granting the trustee's motion to extend the bar date, however, was mailed to Coggin when it was granted. On August 3, 1989, Mrs. Coggin filed an identical motion under Rule 4004(b), which the bankruptcy court also granted immediately, without affording Coggin either notice or a hearing. On the day she filed the motion, Mrs. Coggin served it by mail on Coggin's attorney, but not on Coggin himself.
 
 
 3
 On September 28, 1989, Mrs. Coggin initiated an adversary proceeding by filing a complaint objecting to the discharge of certain debts of Coggin, pursuant to section 523, or, in the alternative, objecting to his discharge generally, pursuant to section 727. The bankruptcy court granted partial summary judgment to Mrs. Coggin, holding that Coggin was obligated to Mrs. Coggin for past due monthly alimony in the amount of $17,486.50 and that such obligation was nondischargeable under section 523. Coggin does not appeal this decision. On October 26, 1989, the trustee filed a complaint objecting to Coggin's discharge under sections 727(a)(2)(A) and 727(a)(4)(A). Specifically, the trustee made two arguments under section 727(a)(4)(A) and one under section 727(a)(2)(A). First, he asserted that Coggin had knowingly and fraudulently made false oaths, in violation of section 727(a)(4)(A), by failing to disclose that he was to receive $8,000 from the settlement of a lawsuit. Second, the trustee asserted that Coggin had again knowingly and fraudulently made a false oath when he failed to disclose a transfer of $13,000 to his son, Tommy, within one year of his filing the petition.[3] Lastly, the trustee alleged that Coggin's transfer of $13,000 to his son, an occurrence which Coggin does not dispute, was a transfer made with the intent to hinder, delay, or defraud creditors in violation of section 727(a)(2)(A).
 
 
 4
 Coggin filed a motion to dismiss both the trustee's and Mrs. Coggin's complaints on the basis that they had failed to file the complaints by the bar date and had not properly moved for an extension of the bar date under Rule 4004(b). Specifically, Coggin asserted that in order for a motion to extend the bar date to be timely, it must be "made" by the bar date, and that such a motion is "made" when it is served. The bankruptcy court acknowledged at that time that it had erred in granting the trustee's and Mrs. Coggin's motions ex parte, without giving Coggin notice or a hearing. The bankruptcy court, therefore, vacated its earlier grant of the extension of the bar date pursuant to section 105(a) and gave Coggin an opportunity to show cause why such an extension should not have been granted. Coggin responded that the motion for extension should not be granted because it was not timely made (i.e., served) and, therefore, the bankruptcy court was procedurally barred from extending the bar date and was required to dismiss the trustee's and Mrs. Coggin's complaints. The bankruptcy court rejected this argument, granted the extension of time, and accepted the complaints as timely filed within the extended time.
 
 
 5
 In April, 1990, trial was held on the claims of the trustee and on Mrs. Coggin's claim that Coggin owed her a portion of several tax refund checks. The bankruptcy court found that Coggin owed Mrs. Coggin $8,398.67 in tax refunds and that such obligation was nondischargeable under section 523(a)(6). The court also found that sufficient evidence was presented to deny Coggin's discharge on all three grounds asserted by the trustee--the two false oaths under section 727(a)(4)(A) and the $13,000 transfer under section 727(a)(2)(A).
 
 
 6
 The district court affirmed the bankruptcy court in all respects on September 30, 1993. Coggin timely filed this appeal. He challenges the rejection of his argument that the trustee and Mrs. Coggin's motions for extension of the bar date were untimely. He also appeals the judgments made against him as to dischargeability under section 727.
 
 
 7
 Additionally, the trustee brought suit against Coggin and his son, Tommy, for recovery of the $13,000 payment Coggin made to Tommy. The trustee settled his case with Tommy prior to the trial in the bankruptcy court. The bankruptcy court found that the transfer of $13,000, in addition to being grounds for denying Coggin's discharge, was also an avoidable conveyance under section 548. The court held, however, that the trustee could not recover that transfer from Coggin under section 550(a)(1). This ruling was affirmed by the district court. The trustee cross appeals this denial of recovery from Coggin.
 
 II. DISCUSSION
 
 8
 In reviewing the judgment of the bankruptcy court in this case, we are presented with three specific holdings. First, we examine the determination of the bankruptcy court that the appellees' motions for extending the bar date were timely made. Second, we evaluate the bankruptcy court's denial of Coggin's discharge under section 727. Finally, we review the determination that a trustee cannot, under section 550(a)(1), recover the value of a fraudulent transfer from the transferring debtor.
 
 A. Timeliness Of Motion To Extend Time
 
 9
 The bankruptcy court's determination that the appellees' motions to extend the bar date were timely made is a question of law reviewable de novo. Southtrust Bank v. Thomas (In re Thomas), 883 F.2d 991, 994 (11th Cir.1989), cert. denied, 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990). The facts underlying this determination are not in dispute.
 
 
 10
 The trustee filed a motion to extend the bar date on July 28, 1989, seven days prior to the bar date. Mrs. Coggin filed a similar motion to extend time on August 3, 1989, the day before the bar date. The bankruptcy court granted both motions ex parte, without a hearing of any kind, on the day each motion was filed. In the case of the trustee's motion, neither Coggin nor his attorney was ever served with the motion. Coggin admits, however, that after the court granted the motion, he received a copy of the order in the mail. Mrs. Coggin's motion contains a certificate of service which includes Coggin's attorney, but not Coggin himself. There is no evidence as to whether the order granting her motion was sent to Coggin.
 
 
 11
 A motion to extend the bar date is a contested matter under the Code. Collier on Bankruptcy states:Broadly speaking, proceedings in bankruptcy cases can be divided into: (1) adversary proceedings, governed by Part VII of the Bankruptcy Rules; (2) administrative matters, in which there is no adversary party (for example, an unopposed motion by a trustee to sell property of the estate); and (3) contested matters, which do not qualify as adversary proceedings because they are not defined as such by Rule 7001 but which, nevertheless, resemble adversary proceedings in that there are two parties who are opposing each other with respect to relief sought by one of them.
 
 
 12
 9 Collier on Bankruptcy p 9014.03 (15th ed. 1994) (footnote omitted). A motion to extend time best fits in the third category, as it is opposed by the debtor, but is not an adversary proceeding enumerated in Rule 7001. As a result, Rule 9014 applies to this motion.[4] Rule 9014 provides in pertinent part:
 
 
 13
 In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004....
 
 
 14
 Fed.R.Bankr.P. 9014 (emphasis added). In the case of a motion under Rule 4004(b), the rule provides that the matter will be initiated by motion and specifically requires notice and hearing. Rule 4004 does not, however, provide how service shall be accomplished on a motion for extension of the bar date. As a result, the requirement of Rule 9014, applicable by default to contested matters, applies. It provides that service will be in the manner provided in Rule 7004 for a summons and complaint.[5]
 
 
 15
 Under Rule 7004(b)(9), if a movant is conducting service by mail, such service must be made on both the debtor and his attorney. There is no question here that neither the trustee nor Mrs. Coggin executed service on Coggin himself. Under Rule 4004(b), a motion to extend the time for filing a complaint objecting to the discharge of a debtor must "be made before such time [for filing a complaint] has expired." Fed.R.Bankr.P. 4004(b) (emphasis added). According to Coggin, a motion for extension of the bar date is "made" when it is served. Since the appellees failed to serve Coggin as required under Rule 7004(b)(9), Coggin contends that the motion was not timely made. Further, he argues that under the current rules the failure of a party to properly make a motion under Rule 4004(b) deprives the bankruptcy court of jurisdiction and, consequently, of any discretion to extend the bar date.
 
 
 16
 In support of his position, Coggin cites several cases that hold that a motion is "made" when it is served. The majority of these cases, however, can be distinguished. Coggin cites a line of cases in which courts have held that a motion to amend findings, or to make additional findings and amend the judgment, is made when it is served, not when it is filed. Sonoma v. Sells (In re Sonoma V), 703 F.2d 429 (9th Cir.1983) (per curiam); Keohane v. Swarco, Inc., 320 F.2d 429 (6th Cir.1963); In re Sonoma V, 21 B.R. 21 (9th Cir. BAP 1982) (mem.). All three of these cases, however, make reference to a motion under Federal Rule of Civil Procedure ("FRCP") 52(b). The two In re Sonoma V cases were decided under the old Federal Rule of Bankruptcy Procedure 752, but, as noted by the bankruptcy court, "[t]his language tracks the language of Fed.R.Civ.P. 52(b)." In re Sonoma V, 21 B.R. at 21. Keohane was decided under FRCP 52(b) itself. In all three cases, the court relied on the following language from Moore's Federal Practice:
 
 
 17
 Although Rule 52(b) refers to a motion of a party "made," while Rule 59(b) and (d) refer to a motion "served," there is no difference in effect, since a motion is "made" by causing it to be served.
 
 
 18
 5A Moore's Federal Practice p 52.11 n. 8. In support of this proposition, Moore's currently cites Keohane itself. It does so, however, with the following parenthetical explanation: "[T]he court reasoned that if a Rule 52(b) motion had to be filed as well as served within the ten day period, there would be little reason for Rule 5(d), granting a reasonable time after service to file the motion." Id.
 
 
 19
 This explanation shows that these cases are not authoritative relative to a motion under Rule 4004(b). FRCP 5(d) provides that "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, shall be filed with the court within a reasonable time after service." Fed.R.Civ.P. 5(d). A motion under FRCP 52(b), of course, would be just such a post-complaint motion to which FRCP 5(d) would apply. A motion under Rule 4004(b), however, is not the same as a motion under FRCP 52(b). Under Rule 9014, a contested-matter motion such as one under Rule 4004(b) is to be treated and served just as a summons and complaint. As such, under Rule 7004(a), service of a motion under Rule 4004(b) is governed by FRCP 4(j).[6] FRCP 4(j) provides that a summons and complaint must be served within 120 days of filing with the court. Fed.R.Civ.P. 4(j). Thus, if the logic of this trio of cases is that it makes no sense for FRCP 5(d) to allow for a reasonable time after service to file a motion if a motion must be filed to be "made," then likewise we are drawn to the conclusion that it makes no sense for Rule 7004(a), by way of FRCP 4(j), to allow 120 days for service after filing a motion under Rule 4004(b) if a motion must be served to be "made." The logic of Moore's statement that a motion is "made" when it is served, therefore, is limited to the particular Federal Rule of Civil Procedure to which it was referring. Likewise, the three cited cases are limited to FRCP 52(d) and old Bankruptcy Rule 752(b).
 
 
 20
 Two bankruptcy court decisions, however, have explicitly held that under Rule 4004(b), a motion to extend the bar date is not "made" until and unless it is served. In re Friscia, 123 B.R. 9 (Bankr.E.D.N.Y.1991); In re Mancini, No. 85-30168, 1986 WL 28905 (Bankr.S.D.N.Y. Mar. 26, 1986). These cases are indistinguishable from the present case. Nevertheless, we disagree with their holdings and hold that a motion to extend the bar date under Rule 4004(b) is "made" when filed.
 
 
 21
 Prior decisions of the bankruptcy court support our position. Although we have found no other case that directly addresses the issue of whether a motion under Rule 4004(b) is "made" when it is filed or when it is served, many cases have mentioned the section in passing. These cases universally use the term "file" when referring to the time limitation imposed on making a motion under Rule 4004(b).[7] None of these cases specifically deals with the issue of whether a motion filed but not served prior to the expiration of the original bar date is timely. Rather, most deal with a motion that was neither filed nor served prior to the original bar date and conclude that the bankruptcy court is without discretion under the current rules to enlarge the time for filing a complaint under Rule 4004(a) when the movant fails to file the motion before the expiration of the bar date.
 
 
 22
 Our position is supported by Collier on Bankruptcy, which states: "Current Bankruptcy Rule 4004(b) permits an extension of the deadline only on motion of a party in interest, only for cause, determined at a hearing on notice, and only if the motion is filed before the original deadline expires." 8 Collier on Bankruptcy p 4004.02 (emphasis added). It further states that "[t]he motion [under Rule 4004(b) ] must be filed within the original time period for complaints objecting to discharge." Id. p 4004.04 (emphasis added).
 
 
 23
 Common sense also supports our conclusion that a motion under section 4004(b) is "made" when it is filed, rather than when it is served. Rule 4004(c) provides: "In a Chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case pursuant to Rule 1017(e), the court shall forthwith grant the discharge...." Fed.R.Bankr.P. 4004(c). Black's Law Dictionary defines "forthwith" as:
 
 
 24
 Immediately; without delay; directly; within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch. Within such time as to permit that which is to be done, to be done lawfully and according to the practical and ordinary course of things to be performed or accomplished. The first opportunity offered.
 
 
 25
 Black's Law Dictionary 654 (6th ed. 1990) (citation omitted). Under Rule 4004(c), therefore, the bankruptcy court is obligated, as soon as practicable after the passage of the bar date, to enter a discharge for the debtor, assuming no complaints objecting to such discharge have been filed. If service on the debtor and his attorney is adequate for a motion to be "made" under Rule 4004(b), but filing is not required to be achieved prior to the bar date, then the court could be left in the position of entering a discharge when there is a validly "made" motion for an extension of time outstanding. Common sense tells us that it is imperative for the court to know, prior to the expiration of the bar date, whether any motions for extension of the bar date have been "made." The court will be so informed if a motion is "made" when filed.
 
 
 26
 Having ruled that a motion under Rule 4004(b) is "made" when it is filed, we determine the effect of that holding on this case. It is true that "[e]very written motion other than one which may be considered ex parte must be served by the moving party on the trustee or debtor in possession and on those entities specified by the Bankruptcy Rules." 9 Am.Jur.2d Sec. 74. As discussed above, Rule 9014 applies Rule 7004 to a motion under Rule 4004(b). Rule 7004(a), incorporating FRCP 4(j), requires service within 120 days of the filing of a complaint or, in this case, a motion. When serving a motion by mail, Rule 7004(b)(9) requires service on both the debtor and his attorney. It is undisputed that neither the trustee nor Mrs. Coggin served Coggin. The issue of the exact timing of acceptable service of a motion to extend the bar date, therefore, is not before us in this case, as it is undisputed that service was never properly completed.[8]
 
 
 27
 As a corollary to our holding that a motion is "made" when filed, we also hold that failure to serve the debtor or his attorney or both prior to the expiration of the bar date does not constitute failure to "make" a motion within the prescribed time. It is well-settled that under the new Bankruptcy Rules, the bankruptcy court has no discretion to grant an extension of the bar date when a motion to do so is not "made" prior to the expiration of the bar date. See In re Lane, 37 B.R. at 412-13. We hold that if a motion is filed but not served prior to the bar date, the jurisdictional requirement of rule 4004(b) is met, and the bankruptcy court retains jurisdiction to extend the bar date if service is proper, or to employ its equitable powers if service is not perfected properly.
 
 
 28
 We are called upon here to determine whether the bankruptcy court erred as a matter of law in allowing the appellees additional time to file a complaint objecting to Coggin's discharge. The facts of this case indicate that the court had this power and did not abuse its discretion in doing so. Thinking that it had the power to give the appellees an extension ex parte, the court granted their motions as soon as they were submitted, with no notice and no opportunity for Coggin to be heard. This decision, of course, was erroneous, as it was contrary to the plain language of Rule 4004(b), which provides that such a motion may only be granted "after hearing on notice." Fed.R.Bankr.P. 4004(b). The error, however, was that of the court and not of the appellees. The appellees had time to serve Coggin after they filed their motions, but because of the court's immediate granting of the motions and the fact that notice of the extension was given to Coggin, the pleading itself had already been rendered moot. Hence, while the appellees erred in never serving Coggin and his attorney, the actions of the court in granting the motions ex parte created a situation where such error was excusable.[9]
 
 
 29
 Having decided that the motions of the appellees to extend the bar date were properly "made" when filed, and that their failure to serve Coggin in this case was excusable due to the error of the court, we must determine whether the court properly granted those motions. We are not addressing the merits of such a decision, but rather whether the process followed by the court was proper. Upon determining that it had erred in granting the motions ex parte, the court set aside its earlier order pursuant to section 105(a) and afforded Coggin a hearing and an opportunity to dispute the appellees' motions for extension of the bar date. After the hearing, the court found that there were sufficient facts to justify the grant of the extension and that Coggin was not prejudiced by the extension.
 
 
 30
 Section 105(a) provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. Sec. 105(a). The bankruptcy court has the equitable power to correct, modify, or vacate its own interlocutory orders. See A & A Sign Co. v. Maughan, 419 F.2d 1152, 1155 (9th Cir.1969); Dore & Assocs. Contracting, Inc. v. American Druggists' Ins. Co., 54 B.R. 353, 360 (Bankr.W.D.Wis.1985). Coggin argues that such modification here is beyond the equitable power of the court because the failure of the appellees to serve him prior to the expiration of the bar date amounts to a failure to meet the requirements of Rule 4004(b) and therefore amounts to a jurisdictional bar. Since we have held, however, that only failure to file a motion for extension of the bar date raises a jurisdictional bar under Rule 4004(b), the court retained equitable power in this case. We find no error in the court correcting its own mistake of granting the appellees' motions ex parte. In addition, service by the appellees after the court had granted the motions and sent the orders to Coggin would have been fruitless. As a result, the failure of the appellees to serve Coggin here was excusable. Moreover, Coggin received notice and a hearing, which is the purpose of service. We hold, therefore, that the appellees satisfied the jurisdictional bar of Rule 4004(b) when they filed their motions prior to the expiration of the bar date, that appellees' failure to serve Coggin himself was excusable in light of the court's error in granting their motions ex parte, and that the court had the equitable power to correct its earlier mistake and grant the motions after affording Coggin notice and a hearing. The extension of the bar date here was valid.
 
 B. Validity Of Denial Of Discharge
 
 31
 Coggin next complains that the court erred in denying his discharge under section 727.[10] The bankruptcy court denied Coggin's discharge on two bases. First, it found that certain statements or omissions Coggin made constituted knowingly and fraudulently made false oaths under section 727(a)(4)(A). Secondly, it held that the transfer of $13,000 to his son, Tommy, constituted a transfer of property of the debtor with the actual intent to hinder, delay or defraud a creditor, in violation of section 727(a)(2)(A). Coggin challenges both of these determinations.
 
 
 32
 The bankruptcy court held that Coggin should be denied a discharge under section 727(a)(2)(A). Section 727(a) provides in pertinent part:
 
 
 33
 (a) The court shall grant the debtor a discharge, unless--
 
 
 34
 ....
 
 
 35
 (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
 
 
 36
 (A) property of the debtor, within one year before the date of the filing of the petition ....
 
 
 37
 11 U.S.C. Sec. 727(a) (emphasis added). In this respect, the court found as follows:
 
 
 38
 Coggin converted various assets to cash in February and March, 1989 and then transferred Thirteen Thousand Dollars ($13,000) in cash to his son, Tommy. It is clear from the testimony that the transfer of such sum was to pay future child support obligations and was to avoid the claims of his ex-wife. Such transfer was with the intent to hinder, delay and defraud his Creditors, including his ex-wife, and constitutes a violation of Sec. 727(a)(2)(A), Bankruptcy Code.
 
 
 39
 ....
 
 
 40
 The transfer of the Thirteen Thousand Dollars ($13,000) from Coggin to Tommy was made with the actual intent to hinder, delay or defraud Phyllis Coggin and the other Creditors of the Debtor. The transfer was made while the Debtor was insolvent and while there were many existing Creditors. Pursuant to Section 502(b)(5), Bankruptcy Code, Tommy would not be able to have any claim with the estate in that, even though the obligation of Coggin to pay child support would not be dischargeable through his bankruptcy. [sic] Only a pre-petition obligation for support could be considered a Claim in the Estate. Congress clearly intended that post-petition support obligations were to be paid out of the Debtor's post-petition income, and not from property of the Estate. The overall plan and concept of bankruptcy, in this regard, is that the assets of the Estate are to be used only to pay the legitimate Claims of the Creditors in existence as of the filing of the Petition. The future support owed to Tommy was not a matured debt and, thus, Section 502(b)(5) would prevent the payment of such Claim from the assets of the estate. For this reason, the Debtor could not be permitted to pay such support from those assets before the filing of his Petition.
 
 
 41
 ... The Court is convinced that the transfer of the Thirteen Thousand Dollars ($13,000) by Coggin to Tommy was a transfer made within one year before the filing of the Petition and was made with the actual intent to hinder, delay or defraud Phyllis Coggin or the other Creditors of the Debtor.
 
 
 42
 Bankruptcy Court Memorandum of Decision at 9, 11-12 (citation omitted). The bankruptcy court's finding that the transfer in question was made with the actual intent to hinder, delay, or defraud is a question of fact which we will disturb only if it is clearly erroneous. Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir.1987). The bankruptcy court, after a trial on the merits of this action, determined that Coggin made the transfer here with actual intent and in violation of section 727(a)(2)(A). Finding ample evidence in the record to support this conclusion, we find no clear error in the court's decision.
 
 
 43
 A denial of discharge under section 727(a) is total, causing all creditors to continue to have a post-petition claim against the debtor and his present and future assets. As the denial under any one of the subsections of section 727(a) yields the same result, only one of the bankruptcy court's bases for denial need be upheld. We therefore need not address the court's finding of nondischargeability under section 727(a)(4)(A). We hold that the bankruptcy court properly denied Coggin's discharge under section 727(a)(2)(A) for making a transfer to his son with the actual intent to hinder, delay, or defraud a creditor.
 
 
 44
 C. Trustee's Cross Appeal For Money Judgment Against Debtor
 
 
 45
 Finally, the trustee appeals the bankruptcy court's determination that the Code vested no power in the trustee to recover the amount transferred to Tommy from Coggin. The bankruptcy court held that although the transfer from Coggin to Tommy was avoidable under section 548, "Section 550 does not authorize or permit recovery against a Debtor for the value of property fraudulently transferred." Bankruptcy Court Memorandum of Decision at 13. Based on our analysis affirming the finding of a fraudulent transfer in violation of section 727(a)(2)(A), there is no question that the transfer here is avoidable under section 548(a)(1), which employs the same legal standard as section 727(a)(2)(A).[11] The relevant portion of section 550 provides:(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
 
 
 46
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.
 
 
 47
 11 U.S.C. Sec. 550(a)(1). The trustee argues that Coggin is an "entity for whose benefit such transfer was made," id., and, therefore, that the estate is entitled to recover from Coggin the value of the property conveyed to Tommy.[12]
 
 
 48
 This issue appears to be one of first impression. We have not found, and the parties did not cite, a single case in which a court decided whether a transferring debtor is an "entity for whose benefit such transfer was made" under the Code. By applying its plain language and apparent purpose, and by consulting our bankruptcy compass, however, we hold that section 550(a)(1) does not allow recovery of an avoided transfer from the transferring debtor. First, the plain language of the statute indicates that a debtor was not intended to be an entity from whom recovery may be had under section 550(a)(1). The statute states that the trustee may recover an avoided transfer from an "entity for whose benefit such transfer was made." Id. In reality, an avoidable transfer of which section 550(a)(1) allows recovery will only occasionally directly benefit a debtor. Generally, a debtor has a fixed amount of assets and liabilities, and bankruptcy will schedule these in such a way as to deplete the debtor's assets, aside from those which are exempt, in achieving the maximum possible satisfaction of the existing liabilities. The debtor will usually receive a benefit in making an avoidable transfer in only two situations. First, the debtor may benefit in the case of a fraudulent transfer where the debtor retains an interest in the transferred assets, thereby protecting some assets from the reach of the bankruptcy process and benefitting the debtor. The second situation in which the debtor may benefit from an avoidable conveyance arises when the conveyance is made to satisfy a nondischargeable obligation, so that the debtor will receive his discharge with less post-discharge obligations remaining. Thus, it is arguable that section 550(a)(1) was intended to apply to debtors when the court finds that the transfer did, in fact, benefit the debtor in some way beyond that afforded by the liquidation or reorganization and the subsequent discharge. For this reason, we look for other guideposts.
 
 
 49
 The traditional usage of section 550(a)(1) also indicates that it was not intended to allow recovery from a transferring debtor. The phrase "entity for whose benefit such transfer is made" typically has been employed when the trustee attempts to recover from a guarantor of an underlying debt. If one guarantees a debt of the debtor, and the debtor then satisfies that debt with an avoidable conveyance, the guarantor receives a direct benefit in the elimination of his matured obligation to pay the unsatisfied portion of the debt. This is particularly true in the bankruptcy context, where the underlying debt is generally listed as an obligation of the estate, it is not paid in full by the debtor, and the guarantor's obligation matures.[13]
 
 
 50
 In the typical case where a guarantor is the "entity" from which the trustee can recover under section 550(a)(1), there is a real and immediate financial benefit to the guarantor. By the debtor satisfying the underlying obligation, the guarantor is relieved of his matured obligation to pay any unsatisfied portion. This relief from an obligation to pay money is the economic equivalent of the receipt of money by one to whom money is owed.
 
 
 51
 We have found no cases in which a court allowed a trustee to recover the value of an avoidable conveyance directly from the transferring debtor under section 550(a)(1). Having no guidance, we have applied the language of the statute and its apparent purpose, as well as economic reality and the contextual sense of the statutory scheme, to interpret the likelihood that Congress intended to include the debtor as an "entity" from which the trustee could recover under section 550(a)(1).[14] After examining these factors, we agree with the bankruptcy and district courts that there is no cause of action created by section 550(a)(1) in a trustee to recover the value of an avoidable conveyance from a transferring debtor.
 
 III. CONCLUSION
 
 52
 Coggin has challenged the bankruptcy court's determination that the trustee and Mrs. Coggin "made" their motions to extend the bar date in a timely fashion, and that he is a nondischargeable debtor under section 727. In addition, the trustee has challenged the court's holding that the trustee cannot recover the value of an avoidable transfer directly from the transferring debtor under section 550(a)(1). We hold that a motion for extension of the bar date under Rule 4004(b) is "made" when it is filed, and we affirm the court's grant of said extension and acceptance of the complaints by the trustee and Mrs. Coggin. Next, we find that the district court properly denied Coggin's discharge under section 727(a)(2)(A). Finally, we hold that there is no cause of action under section 550 for the value of an avoidable transfer against the transferring debtor as an "entity for whose benefit such transfer was made."
 
 
 53
 AFFIRMED.
 
 
 
 *
 Honorable Federico A. Moreno, U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Unless otherwise noted, all references to sections are to the Bankruptcy Code
 
 
 [2]
 Hereinafter all references to rules will be to the Federal Rules of Bankruptcy Procedure, unless otherwise noted
 
 
 [3]
 There was much discussion and dispute in the lower courts as to whether Coggin's statements or failures to disclose were, in fact, false. Because we uphold the determination of nondischargeability under Sec. 727(a)(2)(A), we need not address the issue of nondischargeability under Sec. 727(a)(4)(A). Therefore, the truthfulness or falsity of Coggin's statements is irrelevant, and we do not address the arguments or repeat the alleged false statements or omissions
 
 
 [4]
 Rule 9014 makes applicable to contested matters certain of the Federal Rules of Bankruptcy Procedure that are nominally applicable only to adversary proceedings
 
 
 [5]
 Coggin agrees that Rule 7004 governs the method of service here. Presumably he would also agree that other portions of Rule 7004, including those relating to timing of service, also apply
 
 
 [6]
 It is important to note that Rule 7004(g) makes clear that the numbers of the Federal Rules of Civil Procedure referred to in Rule 7004 are the numbers in effect on January 1, 1990, prior to any amendments. Therefore, although the timing of service of a summons and complaint is now governed by FRCP 4(m), the reference to FRCP 4(j) in Rule 7004(a) is to the pre-amendment version in which FRCP 4(j) was still the section governing service of a summons and complaint
 
 
 [7]
 See In re Harvey, 69 B.R. 411, 412 (N.D.Ohio 1987) ("The conclusion must be that the court has no discretion to enlarge the time for filing a complaint objecting to discharge when the motion for extension has been filed past the deadline." (emphasis added)); In re Park, 154 B.R. 741, 743 (Bankr.W.D.Mo.1993) ("There is nothing in the ... rules which extends the 60 day time frame from the first scheduled meeting of creditors unless a motion is filed within the specified time." (emphasis added)); In re Sherf, 135 B.R. 810, 812 (Bankr.S.D.Tex.1991) ("[T]he time for filing motions to extend the time under Bankruptcy Rule 4004(b) had expired by March 7, 1991." (emphasis added)); In re Hall, 128 B.R. 175, 176 (Bankr.S.D.Tex.1990) ("Bankruptcy Rules 4004(b) and 4007(c) provide that such motions must be filed before the 60 days from the first date set for the meeting of creditors has expired...." (emphasis added)); Columbia First Fed. Savs. & Loan Ass'n v. Rae (In re Rae ), 115 B.R. 6, 8 (Bankr.D.D.C.1990) ("Bankruptcy Rules 4004(b) and 4007(c), in conjunction with Bankruptcy Rule 9006(b)(3), prohibit extension based on a motion filed after the bar date." (emphasis added)); Park View Fed. Savs. & Loan Ass'n v. Argust (In re Argust ), 100 B.R. 896, 897 (Bankr.N.D.Ohio 1989) ("Even, if Park View had sought an extension of time within which to file its complaint, such an extension would have been denied in that such a motion should have been filed before October 7, 1987." (emphasis added)); In re Wilson, 90 B.R. 491, 495 (Bankr.N.D.Ala.1988) ("[A] request for such an extension must be filed before the expiration of the time for filing such complaints." (emphasis added)); In re Gallagher, 70 B.R. 288, 289 (Bankr.S.D.Tex.1987) ("[Bankruptcy Rule] 4004(b) states that a motion for extension of time may not be filed more than 60 days following the first date set for meeting of creditors." (emphasis added)); Stodd v. Mufti (In re Mufti ), 61 B.R. 514, 518-19 (Bankr.C.D.Cal.1986) ("Under the current Bankruptcy Rules, however, a motion for an extension of the time to file a complaint objecting to discharge must, pursuant to Bankruptcy Rules 4004(b) and 9006(b)(3), be filed before expiration of the original bar date set by Bankruptcy Rule 4004(a)." (emphasis added)); In re Betinsky, 58 B.R. 814, 816 (Bankr.E.D.Pa.1986) ("Since Cohen's [Rule 4004(b) ] motion was filed after the 60 day periods had expired, we will deny the motion." (emphasis added)); Agway Ins. Co. v. Grant (In re Grant ), 45 B.R. 265, 266 (Bankr.D.Me.1984) ("At no time prior to [the bar date] did Agway Insurance Company file a motion [under Rule 4004(b) ] for the enlargement of time." (emphasis added)); Bradco Supply Corp. v. Lane (In re Lane ), 37 B.R. 410, 414 (Bankr.E.D.Va.1984) ("It would be an abuse of this Court's discretion to reach any conclusion other than a requirement that a motion [under Rule 4004(b) ] be filed prior to the expiration of the time limitations set out in Rules 4004(a) and 4007(a)." (emphasis added))
 
 
 [8]
 We do make the following comments about service, however. First, service, like filing, will generally be expected to be made prior to the expiration of the original bar date. Service by mail is permitted, and service is considered complete when mailed. Fed.R.Bankr.P. 7004(b) and (f). In addition, the debtor and his attorney are both under an ongoing obligation to keep their addresses current in the records on file with the bankruptcy court. Cossio v. Cate (In re Cossio ), 163 B.R. 150, 156 (9th Cir. BAP 1994). Under Rule 7004(b)(9), service is effective on a debtor if it is mailed to "the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing." Fed.R.Bankr.P. 7004(b)(9). Therefore, service is effective on a debtor even if mailed to the wrong address, if the address to which it is mailed is the last listed by the debtor in a filed writing. Service of the debtor and his attorney should, therefore, generally present no difficulty to a movant and should be completed at the same time as filing, prior to the expiration of the bar date. This reasoning is supported by common sense, for while the court's need to know of the existence of a motion to extend the bar date may be slightly greater than that of a debtor, a debtor still has a vital interest in the status of his discharge. This view further comports with the bankruptcy policy of granting a debtor a discharge, and hence a "fresh start," as expediently, efficiently, and fairly as possible in appropriate circumstances
 
 
 [9]
 As we noted at the outset, this case is a knot that each party participated in tying. Coggin, when he received notice that the trustee's motion had been granted, apparently prior to the expiration of the bar date, should have moved the court to revoke or amend that grant, as it was improper without a hearing on notice. Instead, whether consciously or not, Coggin sat on his rights and later brought this jurisdictional challenge
 
 
 [10]
 Coggin also challenges the bankruptcy and district courts' determinations relating to a 1986 tax refund he received which is addressed in his divorce decree. The bankruptcy court held that he owed Mrs. Coggin one-half of the actual amount of the refund received after the 1986 return was amended. The court also held that this obligation was nondischargeable. Coggin does not, in his brief, address the issue of the dischargeability of this debt. He does, however, challenge the determination of the amount of the refund owed to his former wife. After a careful examination of the evidence and decisions of the lower courts, we find no error in their determinations and affirm their holdings in all respects relevant to this obligation
 
 
 [11]
 Coggin does not materially dispute this point in his brief aside from a reiteration of his challenge to the finding that he committed a transfer in violation of Sec. 727(a)(2)(A)
 
 
 [12]
 There has apparently been a settlement between the trustee and Tommy. If that settlement calls for Tommy to repay any monies to the estate, that amount would, of course, be deducted from any right of recovery the estate has against Coggin. The estate is entitled to only one satisfaction. 11 U.S.C. Sec. 550(c)
 
 
 [13]
 Much of the controversy in this area deals with a very specific issue: whether a payment which is avoidable under Sec. 547(b)(4)(B) as a preferential transfer to an insider within one year but more than ninety days prior to the filing of the petition may be recovered not only from the insider but also from the non-insider who is either the guarantor or the direct transferee. The courts are split on this question. Compare Levit v. Ingersoll Rand Fin. Corp., 874 F.2d 1186, 1194-1200 (7th Cir.1989) (non-insiders liable) with Rubin Bros. Footwear, Inc. v. Chemical Bank (In re Rubin Bros. Footwear ), 119 B.R. 416, 425 (S.D.N.Y.1990) (non-insiders not liable, refusing to follow Levit ). In any event, the phrase "entity for whose benefit such transfer was made," has heretofore primarily addressed the guarantor situation
 
 
 [14]
 There is very little legislative history on section 550(a), and none at all addressing the meaning of the term "entity for whose benefit such transfer was made." We note, however, that Sec. 60b of the Bankruptcy Act, the precursor to Sec. 550 of the Bankruptcy Code, allowed recovery from "the creditor receiving [the transfer] or to be benefitted thereby." Act of June 22, 1938, Pub.L. No. 75-696, Sec. 60b, 52 Stat. 840, 870. Section 60b clearly did not contemplate recovery from the debtor himself, and we find no indication that Congress intended to permit such recovery when it enacted Sec. 550