**In re Ronald Eugene HIEGEL and Jeanne Lynn Hiegel, Debtors.**

**THOMSON McKINNON SECURITIES, INC., Plaintiff,**

v.

**Ronald Eugene HIEGEL and Jeanne Lynn Hiegel, Defendants.**

**Bankruptcy No. 88–20978–7.
Adv. No. 89–0018.**

United States Bankruptcy Court,
D. Kansas.

Aug. 23, 1990.

Richard C. Wallace of Evans & Mullinix, Kansas City, Kan., William C. Partin, Kansas City, Mo., for debtors/defendants.

Michael H. Berman, Prairie Village, Kan., Gordon D. Gee, Kansas City, Mo., for plaintiff.

Carl R. Clark, Overland Park, Kan., Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the September 13 and 14, 1989, hearing on plaintiff, Thomson McKinnon's Complaint objecting to the defendants Ronald Eugene Hiegel and Jeanne Lynn Hiegel's discharge under § 727 of Title 11 of the United States Code. The plaintiff Thomson McKinnon Securities, Inc. appeared by and through its attorneys, Michael H. Berman and Gordon D. Gee. The debtors, Ronald Eugene Hiegel and Jeanne Lynn Hiegel, appeared in person and by and through their attorneys, Richard C. Wallace and William C. Partin.

### FINDINGS OF FACT

Based upon the pleadings and the record, this Court finds as follows:

1. That on or about October 11, 1984, the defendants Ronald Eugene and Jeanne Lynn Hiegel, (hereinafter "debtors") opened an account with the plaintiff Thomson McKinnon Securities, Inc.

2. That Thomson McKinnon Securities, Inc. (hereinafter "Thomson McKinnon") is a duly licensed stock brokerage and commodity futures trading firm incorporated under the laws of the State of Delaware. Its principal place of business is located in the State of New York.

3. That on October 19, 1987, now known as "Black Monday," the stock market crashed. This resulted in Thomson McKinnon liquidating the account of the debtors on October 28, 1987, leaving said debtors' account with an alleged debit balance of $76,812.13.

4. That on November 9, 1987, Thomson McKinnon instituted an action against the debtors in the United States District Court for the Western District of Missouri. (This action was stayed after the bankruptcy proceedings were initiated on July 13, 1988, by the debtors in this Court.)

5. That in January 1988, debtors purchased a residence at 12001 Aberdeen Road, Leawood, Kansas, (hereinafter "Leawood home.")

6. That on February 3, 1988, the debtors moved into the Leawood home, after previously living at 4011 East Red Bridge Road, Kansas City, Missouri (hereinafter "Red Bridge home").

7. That shortly after the debtors moved into the Leawood home they sold certain small household items such as a toaster oven and a calculator to Steve Moore, Jennie Brown and Jerry Powell for a total approximate amount of $205.16.

8. That on April 11, 1988, the debtors made an additional principal payment on their Leawood home mortgage of $5,000.00.

9. That in April, 1988, the debtors sold a 1983 Cutlass Ciera LS automobile for $2,500.00.

10. That in May, 1988, the debtors sold 15 units of First Capital Institutional Real Estate Limited, and 10 units of Carlyle Real Estate Ltd. Partnership XIV, receiving the net proceeds of $10,600 and $5,300 respectively from the sale. Those proceeds were used to pay on the mortgage of the Red Bridge property and the Leawood property.

11. That on July 1, 1988, the debtors sold their interests in the two limited partnerships to their attorney, William C. Partin, for $2000.

12. That in early July, 1988, the debtors paid their normal everyday living expenses

and bills, including the July mortgage payment of $868 on the Leawood home.

13. That on July 5, 1988, the debtor wife applied for and received the Kansas licenses for the debtors' two automobiles, after paying the personal property taxes and license fees in the total amount of $498.02.

14. That on July 8, 1988, the debtors sold the Red Bridge home for $66,000 and used the proceeds from the sale to retire the swing loan from Commerce Bank which was held on the Red Bridge home, said loan having previously been used to finance, in part, the purchase of the Leawood home.

15. That on or about July 11 or 12, 1988, the debtors also made an additional mortgage payment of $5,900 on the Leawood home.

16. That on July 13, 1988, the debtors filed their petition for relief under Chapter 7 of Title 11, United States Code.

17. That on February 21, 1989, Thomson McKinnon filed its Complaint against the debtors.

18. That on September 13 and 14, 1989, this matter came on for trial; and, after hearing the testimony of the witnesses and the arguments of counsel, this Court took the matter under advisement.

19. That on May 14, 1990, this Court issued its Order Dismissing Counts I and II of Thomson McKinnon's Complaint per agreement of the parties, but found that Counts III and IV of the Complaint would remain under advisement.

### ISSUES OF LAW

(1) Whether the debtors' transfer of non-exempt assets into exempt assets on the eve of filing their bankruptcy petition warrants a denial of the debtors' discharge under § 727(a)(2)(A).

(2) Whether the debtors' omissions and misplaced statements on their bankruptcy petition warrants a denial of the debtors' discharge under § 727(a)(4).

### CONCLUSIONS OF LAW

██ Under Title 11 of the United States Code, section 727 provides in pertinent part as follows:

(a) The Court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

As this Court stated in *In re Fine*, 89 B.R. 167 (Bankr.D.Kan.1988), § 727(a)(2)(A) requires that four elements be shown for this Court to deny a discharge to a debtor: (1) a transfer of property occurred; (2) the property was property of the debtor; (3) the transfer occurred within one year of the filing of the petition; and (4) the debtor had, at the time of the transfer, the intent to hinder, delay or defraud a creditor. *Id.* at 173. In addition, pursuant to Bankruptcy Rule 4003, the plaintiff bears the burden of proof in objecting to the discharge of the debtor. *Id.*

In the case at bar, the first three elements are undisputed. The debtors admit that the transfers were made of their property within one year of the filing of their bankruptcy petition. The fourth element however, is disputed. In order for this Court to determine that the debtors, at the time of the transfers, had the intent to hinder, delay, or defraud a creditor, it must look at what has been termed the "badges of fraud."

As was noted in *Fine*, there are seven "badges of fraud" which must be considered. The first is that "the objecting creditor had a 'special equity' in the non-exempt property which is converted into exempt property." *Fine*, 89 B.R. at 174. Kansas has long held that creditors who hold a "special equity" in nonexempt property which has been converted into exempt

property, may be able to show that fraudulent intent exists. *Exchange State Bank v. Poindexter*, 137 Kan. 101, 19 P.2d 705, 708 (1933). In the case at bar, this Court finds that Thomson McKinnon has not proven that it has any "special equity" in the nonexempt property that the Hiegels transferred into exempt property.

The second badge is that "the debtor and the transferee enjoyed a family, friendship, or close associate relationship." *Fine*, 89 B.R. at 174. In the present case, the debtors sold 15 units of First Capital Institutional Real Estate Limited for $10,800. This transfer was not to a family member, friend or close associate; nor was the transfer of the 10 units of Carlyle Real Estate Limited Partnership XIV in which they received the net proceeds of $5,300 from the Liquidity Fund. Further, the sale of the debtors' 1983 Cutlass cannot be classified as a "badge" in that the debtors sold the car after having advertised it in the *Kansas City Star*. Moreover, the sale of the debtors' Red Bridge home does not constitute a badge of fraud.

The sales of the household items such as a toaster oven and a calculator, although they were to acquaintances, involved such a nominal amount ($205.16), this Court cannot find that these sales constitute a badge of fraud. The debtors also sold their interests in two limited partnerships, Balcor and Realty Southwest to their attorney, William C. Partin for $2,000. Although the debtors have an attorney-client relationship with their attorney, this transfer was to pay Mr. Partin's attorney's fees. The Court finds that the mere fact that the debtors transferred property in this manner is not sufficient to determine it was done so with intent to hinder, delay, or defraud creditors. Though this could possibly fall within the realm of another section of the Code, the Court fails to see it as being sufficient to hinder, delay, or defraud other creditors. When a transfer of property to a family member, friend or close associate occurs, this Court looks at another indicia of fraud: whether it was a gratuitous transfer or if the debtor received adequate consideration. *In re Fine*, 89 B.R. 167, 175 (Bankr.D.Kan.1988); *In re Butler*, 38 B.R. 884 (Bankr.D.Kan.1984). Here the transfer was in no way gratuitous but was adequate since the debtors were paying their attorney for his services.

The third badge is that "the debtor retained the possession, benefit, or use of the property in question." *Fine*, 89 B.R. at 174. There is no relevance in this case since the debtors did not retain possession of the property.

The fourth badge of fraud is that "the debtor engaged in a sharp pattern of dealing immediately before bankruptcy." *Fine*, 89 B.R. at 174. Although the debtors did engage in numerous transactions even on the eve of filing their bankruptcy petition this Court finds that the debtors were exercising "pre-bankruptcy planning". *See Fine*, 89 B.R. at 174.

The fifth badge of fraud is that "the debtor became insolvent as a result of the transfers." *Fine*, 89 B.R. at 174. Here, Thomson McKinnon has failed to prove that the debtors became insolvent as a result of the transfers. In fact, Thomson McKinnon admits in its Memorandum and Authorities in Support of Its Proposed Findings of Fact and Conclusions of Law that the debtors "are not suffering from severe financial difficulties" and "they are better off financially than the vast majority of Americans." *Memorandum*, at 3.

The sixth badge of fraud is that "the conversion occurred after the entry of a large judgment against the debtor." *Fine*, 89 B.R. at 174. Again, Thomson McKinnon has failed to prove this point. The Court is fully aware that a lawsuit against the debtors was filed in the Western District of Missouri before the debtors filed their bankruptcy. But, the debtors filed their bankruptcy on July 13, 1988 *while* the civil action was still pending. Thus, under § 362 that action was stayed. As of this date no judgment has been rendered against the debtors and this Court will not speculate as to what the result might be in regards to the civil action.

The seventh badge of fraud is that "the debtor received inadequate consideration." *Fine*, 89 B.R. at 174. Again, Thomson

McKinnon failed to prove that the consideration the debtors received on all their transfers was inadequate.

This Court finds that although not every badge of fraud must be proven by the plaintiff "there must be sufficient indicia to rise to the level of clear and convincing evidence that the debtor intended to hinder, delay, or defraud creditors." *In re Fine*, 89 B.R. 167, 174 (Bankr.D.Kan.1988). In the case at bar, Thomson McKinnon has failed to sustain its burden of proof that the transfers were made with intent to hinder, delay or defraud the creditors within the meaning of 11 U.S.C. § 727(a)(2).

It is stated in 11 U.S.C. § 727 in pertinent part as follows:

(a) this Court will grant the debtor a discharge unless:

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

The purpose of this section is to allow creditors to have adequate information of the bankrupt's estate without the need for an examination or investigation to determine if the statements are correct. *In re Watkins*, 84 B.R. 246 (Bankr.S.D.Fla.1988); *In re Wines*, 114 B.R. 794 (Bankr.S.D.Fla.1990).

In order for the Court to find that the debtors' discharge should be denied under § 727(a)(4), two elements must be present and the burden is on the plaintiff as required in Bankruptcy Rule 4005 to prove: (1) the debtor's oath must have been knowingly and fraudulently made; and (2) the statement must have related to a material fact. *In re Kessler*, 51 B.R. 895, 899 (Bankr.D.Kan.1985); *In re Hadley*, 70 B.R. 51, 54 (Bankr.D.Kan.1987); *In re Martin*, 88 B.R. 319, 323 (D.Colo.1988). As this Court stated in *Kessler*, the "materiality requirement of this section depends on whether the false oath was pertinent to the discovery of assets or past transactions" for interested creditors. *Kessler*, 51 B.R. at 899.

In the case at bar, Thomson McKinnon argues that in par. 11(b) of the State-ment of Affairs the debtors failed to identify PaineWebber as having "setoff" the debtors' securities account with them for $10,000. The debtors did however, list PaineWebber under 10(a) of their Statement of Affairs and treated the actions of PaineWebber as a "liquidation" of their securities account on or about October 20, 1987 ("Black Monday.") Thomson McKinnon has failed to prove by clear and convincing evidence that this was a false statement or oath on the part of the debtors that would warrant a denial of discharge. *In re Martin*, 88 B.R. 319, 321 (D.Colo.1988). Furthermore, this omission does not meet the materiality standard as proposed by this Court in the *Kessler* decision, as a creditor could infer this transaction from other parts of the schedules.

Thomson McKinnon states that the debtors omitted several transactions from paragraph 12(b) of their Statement of Financial Affairs, such as: the sale of the debtors' 1983 Cutlass Ciera for $2,500 and the sale of the aforementioned small household items for the approximate amount of $205.16; and thus should be denied a discharge because of these omissions. *In Matter of Vogel*, 16 B.R. 546, 549 (Bankr.S.D.Fla.1981). This Court also had an opportunity to observe the debtors' demeanor while testifying and has given sufficient weight in accordance with the believability of the testimony, and herein concludes that Thomson McKinnon has also failed to meet its burden of proof in this area. *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 901 (10th Cir.1977).

Thomson McKinnon further argues that the debtors listed incorrect balances on their two checking accounts on Schedule B–2 of their bankruptcy petition. The debtors showed a balance of $100 in their joint bank account at Commerce Bank on the day they filed their bankruptcy petition; and a balance of $60 in their joint account at United Missouri Bank; while in fact, plaintiff alleges the balances as shown on the bank statements were $2,960.51 at Commerce Bank and $4,454.66 at United Missouri Bank on the day the debtors filed their petition. Again, Thom-

**660**

son McKinnon has not met its burden of proof in that they failed to account for the fact that up to the eve of filing bankruptcy the debtors had written checks on their bank accounts.

This Court finds that the debtors' payments of their monthly bills for July and additional mortgage payments on the eve of filing their petition, falls within the scope of pre-bankruptcy planning. Although the checks had not cleared the bank when the monthly statement was prepared, under K.S.A. 84-3-104(2)(b) a check is defined as "a draft drawn on a bank and payable on demand." Since the creditors could have demanded payment the same day as the checks were issued and the bank would honor their demand, this Court finds that Thomson McKinnon has failed to prove by a preponderance of the evidence that the debtors' discharge should be denied. *Farmers Co-Op. Ass'n of Talmage, Kan. v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982); *In re Kessler,* 51 B.R. 895, 898 (Bankr.D.Kan.1985); *In re Dobbs,* 115 B.R. 258 (Bankr.D.Idaho 1990) (Debtor, using his client's home construction monies, wrote numerous checks between November 3 and November 7—the day he filed bankruptcy. The court allowed the payments to the extent that they satisfied the claims on the construction project. *Id.* at 268).

IT IS THEREFORE, BY THE COURT, ORDERED That the Complaint of Thomson McKinnon objecting to the discharge of the debtors herein be and the same is hereby DENIED.

This Memorandum shall constitute my Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.