**In re Gary W. PARNES, Debtor.**

**Melody M. PARNES, Plaintiff,**

v.

**Gary W. PARNES, Defendant.**

**MBNA AMERICA, Plaintiff,**

v.

**Gary W. PARNES, Defendant.**

Bankruptcy No. 95–65090–JB.
Adversary Nos. 95–6263, 95–6459.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 5, 1996.

712

Ruth Primm, Atlanta, GA, for Plaintiff MBNA America.

James W. Penland, Atlanta, GA, for Plaintiff Melody Parnes.

Mitchell S. Rosen, Rowe, Foltz & Martin, Atlanta, GA, for Defendant Gary Parnes.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

These consolidated adversary proceedings came on for a trial on plaintiffs' objections to debtor's discharge. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). After considering all of the evidence presented and the arguments of counsel, the Court makes the following findings of fact and conclusions

of law pursuant to Fed.R.Bankr.P. 7052, incorporating Fed.R.Civ.P. 52.

The debtor, Dr. Gary W. Parnes, is a 36 year old dentist in practice with his father, Dr. Irwin Parnes. The plaintiffs are debtor's ex-wife Melody M. Parnes and MBNA America ("MBNA"). Both plaintiffs filed complaints objecting to debtor's discharge under 11 U.S.C. § 727 and objecting to the dischargeability of their particular debts under 11 U.S.C. § 523. Mrs. Parnes's claims arise out of the parties' divorce and MBNA's claims are a result of credit card debt. The Court consolidated the adversary proceedings for trial on the § 727 claims.[1]

Plaintiffs object to debtor's discharge under 11 U.S.C. §§ 727(a)(2)(B) and (a)(4). The objections relate to alleged errors in the Schedules and Statement of Financial Affairs filed by debtor. Debtor filed the Chapter 7 bankruptcy case on April 12, 1995, following a seven-day divorce trial before a jury which occurred in March of 1995. Debtor also filed the required bankruptcy Schedules and Statement of Financial Affairs on April 12, 1995, with the advice and assistance of his attorney, John J. Goger. Mr. Goger was appointed as a Judge to the State Court of Fulton County in April of 1995, and Mitchell S. Rosen was substituted as counsel for the debtor on May 9, 1995. Mr. Rosen filed an amendment to the Schedules on February 7, 1996.

■ Section 727(a)(2) provides:

The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the debtor, after the date of the filing of the petition.

A claim under this section has two components: (1) a transfer or concealment of property of the debtor or the estate and (2) an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor). *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993). The improper act can either be within one year of the petition or post-petition.

■ A creditor proceeding under § 727(a)(2) must prove the debtor possessed an actual intent to defraud when he transferred or concealed his or the estate's property. *Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 306 (11th Cir.1994); *Coggin v. Coggin (In re Coggin),* 30 F.3d 1443, 1452 (11th Cir.1994); *Wines v. Wines (In re Wines),* 997 F.2d 852, 856 (11th Cir.1993). Constructive fraud is insufficient. *Miller,* 39 F.3d at 306. However, actual fraudulent intent may be inferred from the circumstances surrounding the transfer or concealment. *Emmett Valley Assocs. v. Woodfield (In re Woodfield),* 978 F.2d 516, 518 (9th Cir.1992).

■ Section 727(a)(4) provides, in pertinent part, as follows:

The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

. . .

To justify the denial of a discharge under subsection (A), the false oath must be (1) fraudulent and (2) material. *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir.1991).

■ A fraudulent statement under this section must be made with a knowing intent to defraud creditors. *Swicegood,* 924 F.2d at

---

1. The Order addressing debtor's motion to consolidate provided that in the event the Court denies the relief sought by plaintiffs under § 727(a), the Court would then schedule the trial on the § 523 claims brought by plaintiff MBNA. The § 523(a)(15) claims brought by Mrs. Parnes would be set separately for trial after the Court rules on MBNA's objections to dischargeability.

232; *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir.1984). Deliberate omissions from the schedules may constitute false oaths and result in the denial of a discharge. *Chalik,* 748 F.2d at 618 n. 3; *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir.1992). The plaintiff must demonstrate actual, not constructive fraud, *Wines v. Wines (In re Wines),* 997 F.2d 852, 856 (11th Cir.1993), but since defendants will rarely admit their fraudulent intent, actual intent may be inferred from circumstantial evidence, *Ingersoll v. Kriseman (In re Ingersoll),* 124 B.R. 116, 123 (M.D.Fla.1991); *Butler v. Ingle (In re Ingle),* 70 B.R. 979, 983 (Bankr.E.D.N.C.1987). A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. *Beaubouef,* 966 F.2d at 178; *Kalvin v. Clawson (In re Clawson),* 119 B.R. 851, 852–53 (Bankr. M.D.Fla.1990); *Buck v. Buck (In re Buck),* 166 B.R. 106, 109 (Bankr.M.D.Tenn.1993). However, the discharge may not be denied when the untruth was the result of a mistake or inadvertence. *Beaubouef,* 966 F.2d at 178; *First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein),* 168 B.R. 23, 32 (Bankr. E.D.N.Y.1994); *Buck,* 166 B.R. at 108; *Clawson,* 119 B.R. at 852.

The false oath must also be material. *Swicegood,* 924 F.2d at 232. A misrepresentation is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of property. *Chalik,* 748 F.2d at 618. Detriment to creditors need not be shown, *Chalik,* 748 F.2d at 618; *Ingersoll,* 124 B.R. at 123, and the debtor may not defend himself by claiming the assets omitted were worthless, *Chalik,* 748 F.2d at 618; *Beaubouef,* 966 F.2d at 178; *Job v. Calder (In re Calder),* 907 F.2d 953, 955 (10th Cir.1990). Creditors are entitled to judge for themselves what will benefit or prejudice them. *Chalik,* 748 F.2d at 618; *Beaubouef,* 966 F.2d at 178. However, a demonstration that a misstatement is material is insufficient in and of itself to deny a discharge. The misstatement or omission must be made with the requisite fraudulent intent, and the size of the error may bear on whether intent exists.

*Bensenville Community Ctr. Union v. Bailey (In re Bailey),* 147 B.R. 157, 164 (Bankr. N.D.Ill.1992); *United States v. Ayala (In re Ayala),* 107 B.R. 271, 275 (Bankr.E.D.Cal. 1989).

In a § 727(a)(4)(A) case, the court may consider a correction in the schedules, and an explanation of such correction by the debtor, when deciding whether the debtor made a bona fide effort to value his assets when preparing the original schedules. *Wines,* 997 F.2d at 857. However, an amendment including omitted assets in response to a creditor's objections will support a finding that the assets were deliberately omitted. *Swicegood,* 924 F.2d at 232.

The plaintiff in an action under 11 U.S.C. § 727 bears the burden of proving that the debtor is not entitled to a discharge. Fed.R.Bankr.P. 4005. The plaintiff must prove its case by a preponderance of the evidence. *Beaubouef,* 966 F.2d at 178; *First Nat'l Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156, 1157 (10th Cir. 1991); *see also Grogan v. Garner,* 498 U.S. 279, 289, 111 S.Ct. 654, 660–61, 112 L.Ed.2d 755 (1991).

Since a general discharge facilitates a debtor's "fresh start," one of the primary purposes of bankruptcy law, the discharge provisions must be construed liberally in favor of the debtor and strictly against the objecting creditor. *Love v. Tower Loan of Miss., Inc. (In re Love),* 577 F.2d 344, 349 (5th Cir.1978); *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134, 137 (1st Cir.1992); *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir. 1986). The grounds for denial of discharge must be proven specifically, and the proof must be directed at the transfer or concealment alleged. A debtor should not be denied a discharge on "general equitable considerations." *Rice v. Matthews,* 342 F.2d 301, 304 (5th Cir.1965).

I. Alleged Omissions or Misstatements Relating to Debtor's Dental Practices

Debtor practices dentistry with his father at three (3) separate locations in Geor-

gia: one in Cartersville, one in Kennesaw, and one in Austell. The assets of the practice in Kennesaw are held by a professional corporation, Parnes Dental Associates, P.C. Debtor and his father each hold half of the stock in the professional corporation. The assets of the practice in Austell, Georgia, are held by a general partnership, Parnes & Parnes (Austell), which is an equal partnership between debtor and his father. Both the Austell practice and the Kennesaw practice occupy rented space. The assets of the practice in Cartersville, Georgia, are held by a general partnership, Parnes & Parnes (Cartersville), which is an equal partnership between debtor and his father. The debtor and his father own the office building in which the Cartersville practice is located and an adjacent undeveloped lot. Many of the plaintiffs' objections relate to debtor's disclosure and valuation of his interests in these dental practices.

First, plaintiffs argue that debtor's response to Question 16 on the Statement of Financial Affairs amounts to a false oath. Question 16 calls for the nature, location, and name of businesses in which the debtor was involved for two years preceding the filing. The debtor listed Parnes Dental Associates, P.C., stating that he was vice president and treasurer and that it has operated for six years. Plaintiffs argue that debtor willfully omitted listing that he was also a partner in two partnerships with his father in Cartersville and Austell, Georgia, both called Parnes & Parnes.

John Goger, debtor's original bankruptcy attorney, testified about the circumstances surrounding the omission of the Parnes & Parnes partnerships in response to Question 16 of the Statement of Financial Affairs. Mr. Goger claimed responsibility for leaving off the two partnership interests when answering this question. He testified that either the computer software used by his firm did not have room to include three entities at that point in the Statement of Financial Affairs or that the person in his law office helping with the preparation of the schedules believed the Parnes Dental Associates, P.C., was a service entity for the two partnerships. Furthermore, all three practices (the corpo-

ration and the two partnerships) were listed in Schedule B ("Personal Property") and Schedule I ("Current Income of Individual Debtors"). In Schedule B, Item 13, which lists interests in partnerships or joint ventures, debtor answered "Partnerships in two dental practices and one corporation" and listed "Parnes Dental Associates, P.C., Parnes & Parnes # 1, and Parnes & Parnes # 2." In Schedule I, debtor listed three employers as follows:

EMPLOYMENT:

| | |
|---|---|
| Occupation: | Partner |
| Employer name: | Parnes & Parnes # 1 |
| How long employed: | 9 years |
| Address of employer: | 3999 Austell Road |
| | Austell, GA 30001 |

| | |
|---|---|
| Occupation: | Partner |
| Employer name: | Parnes & Parnes # 2 |
| How long employed: | 8 years |
| Address of employer: | 5355 Hwy. 20 N.E. |
| | Cartersville, GA 30120 |

| | |
|---|---|
| Occupation: | Vice President, Treasurer |
| Employer name: | Parnes Dental Associates, P.C. |
| How long employed: | 6 years |
| Address of employer: | 1200 Barrett Parkway |
| | Suite 13 |
| | Kennesaw, GA 30144 |

Reviewing the schedules as a whole and considering the testimony of Mr. Goger and the debtor, the Court finds that debtor did not intend to conceal the existence of his partnership interests or the fact that he practiced dentistry at three locations when he answered Question 16. The partnerships and all three locations are disclosed fully in Schedules B and I, and the incomplete response to Question 16 on the Statement of Financial Affairs was not a knowing or fraudulent false oath. *See First Sec. Bank of Helena v. Hirengen (In re Hirengen)*, 112 B.R. 382, 385 (Bankr.D.Mont.1989).

Second, plaintiffs argue that debtor's listing of the value of his dental practices as "unknown" in Schedule B ("Personal Property") and Schedule C ("Property Claimed As Exempt") is a false oath under § 727(a)(4)(A) and/or a false claim under § 727(a)(4)(B). Plaintiffs argue that debtor had valued the dental practices both in the divorce proceedings and in financial statements submitted to lenders and that he knew they had substantial value when he filed bankruptcy.

To support their argument, plaintiffs presented financial statements and affidavits of the debtor and testimony of an expert in

**716**

valuing dental practices. The financial statements were dated April 22, 1992, November 2, 1992, February 18, 1993, and July 23, 1994, and were prepared for banks. In the April 22, 1992 balance sheet, debtor listed the value of his one-half interest in the three practices as $450,000.00, with liabilities of $203,000.00. In the balance sheet dated November 2, 1992, debtor listed the value of his one-half interest in the three practices again at $450,000.00, with liabilities of $177,000.00. In the balance sheet dated February 18, 1993, debtor listed the value of his one-half interest in the three practices at $525,000.00, with $215,500.00 in liabilities. In the balance sheet dated July 23, 1994, debtor listed the value of his one-half interest in the practices as $434,000.00, with $159,000.00 in liabilities.

Plaintiffs also presented three domestic relations financial affidavits given by debtor in the divorce proceeding. These affidavits were dated October 20, 1993, October 15, 1994, and March 4, 1995. In the affidavit dated October 20, 1993, debtor listed the value of his interest in the three dental practices as "unknown." In the affidavit a year later, on October 15, 1994, debtor listed the value of his stock in the Kennesaw professional corporation at $15,000.00, and negative values for his interests in the two partnerships, -$6,300.00 for Cartersville and -$54,000.00 for Austell. At the time of the divorce trial in March of 1995 and one month before filing bankruptcy, debtor submitted another domestic relations affidavit listing the value of his stock in the Kennesaw practice at $15,000.00, and stating the following:

I do not believe anyone would pay $15,000 to me to be a partner with my father and assume $160,000 in debt and buy this practice with no assurance whether my father would continue to live or continue to practice dentistry and end up solely responsible for the debt.

Debtor gave the following statements in the affidavit on his interests in the Cartersville and Austell partnerships:

*Partnership Interest*
*Cartersville*

I take $42,000 gross annually, which is $26,880 net, which is $2,240 a month net. I do not include the value of the building as a part of this dental practice and the

practice owes $130,000. I therefore do not believe the practice has a sales value because I do not know who would pay me money to assume $130,000 debt and rely upon my father to continue to practice dentistry in that partnership given his age and health.

*Partnership Interest*
*Austell*

I take out $60,000 gross, which is $38,400 net, which is $3,200 a month net that I take out as salary, and the practice owes $80,000. I therefore do not believe the practice has a sales value because I do not know who would pay me money to assume $80,000 debt and rely upon my father to continue to work in the practice given his age and health.

Both debtor and his attorney gave rational and consistent explanations as to why debtor did not attribute a specific value to his one-half interest in the dental practices in the bankruptcy schedules. They testified at length regarding how Dr. Parnes came to file bankruptcy and the discussions between Mr. Goger and Dr. Parnes about the preparation of the schedules. The jury verdict in debtor's divorce case was rendered in March of 1995. Mrs. Parnes was awarded alimony, child support, a property settlement, and attorney's fees. The property settlement and attorney's fees totaled $200,000.00. Debtor was very surprised by the jury verdict, and was described as "in shock." Debtor did not have the money to pay these amounts and his other debts. He stopped seeing patients for two to three weeks. Debtor first met with Mr. Goger, a bankruptcy attorney, about two weeks after the jury verdict, on the recommendation of his divorce counsel. Debtor met with Mr. Goger on three or four occasions before he filed bankruptcy, and they had numerous discussions about his case and his financial condition. He understood that his ex-wife and her lawyers would be scrutinizing everything he filed.

Debtor testified credibly that he did not know the value of the practices at the time he filed the bankruptcy and he still does not know how to value his one-half interest in the practices. Debtor discussed the value of the dental practices with his attorney Mr. Goger, and debtor thought he should list a negative

value as he did not believe anyone would buy half a dental practice with debt. Mr. Goger advised him that rather than state a negative value, the value should be listed in the schedules as "unknown," because they did not really know the value of the practices. Debtor and Mr. Goger rejected the idea of attributing a specific numerical value to the practices, because there was no number they could substantiate. Debtor considered any numerical value to be highly speculative. The Court finds that debtor believed listing the value of the practices as unknown was the most accurate valuation he could provide.

Mr. Goger testified that at the time the schedules were filed, he was convinced that the only possible way to describe the value of half of these dental practices in bankruptcy was as "unknown." He described in detail his thought process and the difficulties inherent in valuing an asset of this sort. His advice was based on his considerable experience as a trustee, a debtor's lawyer, and a creditor's lawyer.

Mr. Goger offered a full explanation of his decision to value the interests as unknown to Mrs. Parnes's counsel very early in the case. Less than two weeks after Mrs. Parnes filed her complaint objecting to debtor's discharge, Mr. Goger wrote Mrs. Parnes's counsel. In that letter, Mr. Goger explained, among other things, his and the debtor's decision to decline to assign a particular value to the debtor's interest in the dental practices on the date of filing. Mr. Goger explained the difficulty, if not impossibility, of valuing the interests in the dental practices under the circumstances. He wrote that the debtor acknowledged that the practice had considerable value to him since the patients he served provided his livelihood, but that there is a serious doubt whether the practices would have any value to creditors in the absence of a seller willing to give a covenant not to compete. He further explained the fact that the equipment in the practice was virtually all either leased or pledged to creditors. Mr. Goger offered to discuss these issues with Mrs. Parnes's counsel and he sent a copy of this letter to the Chapter 7 trustee, Dale Goodman. Mr. Goger testified that Mrs. Parnes's attorney never

called him or responded in any way to this offer to discuss the valuation or other issues covered in the letter.

Debtor and his attorney's decision to list the value of the dental practices as unknown was also validated by the plaintiffs' own expert witness. Plaintiffs called Dr. Earl Douglas, an appraiser and broker of dental practices. Dr. Douglas testified on behalf of Mrs. Parnes in the divorce trial and gave his opinions on the value of these dental practices as going concerns. At the divorce trial, Dr. Douglas did not give any opinion as to the liquidation value of the dental practices. Dr. Douglas has never appraised the interest of one partner in a dental practice where that partner was in bankruptcy. Dr. Douglas testified that it would be a rare situation for a dentist to sell his interest in a practice without a covenant not to compete, and he has never encountered a situation where a dentist was forced to sell his interest in a practice. He agreed that the value of whatever interest an individual might have in a partnership in a forced bankruptcy liquidation would be unknown. He concluded his testimony in this bankruptcy case by saying that the value of debtor's half interest in these practices, given all the debt and other factors present, would be "minimal" or "unknown."

Contrary to plaintiffs' argument, debtor's decision to list the value of the practices as "unknown" was not inconsistent with the affidavits filed in the divorce case. In the first affidavit, debtor listed the value of the practices as unknown. He testified credibly that he included numerical values in the later two affidavits, because the judge at the first hearing on temporary support was upset with the imprecision in the first affidavit. The negative values in the second affidavit and the qualifying statements following the values in the last domestic relations affidavit demonstrate debtor's belief that his one-half interest in a forced sale had no value to anyone but him and that it is difficult to ascribe a specific value under forced sale circumstances.

Finally, debtor explained why his valuations on financial statements previously given to banks were different than the values he

assigned in his contested divorce and bankruptcy proceedings. In the financial statements, he included values derived by valuing the practices as if he and his father were willingly selling the practices as a whole with covenants not to compete. In the divorce and bankruptcy cases, he was valuing his one-half interest in the practices on a forced sale basis. In a forced sale, nothing would stop the debtor from opening a practice next door and nothing would stop his father from joining him. This would seriously impact the value.

The cases cited by plaintiffs for the proposition that it is a fraud for debtors to list assets as "unknown" are distinguishable. In *FDIC v. Ligon (In re Ligon)*, 55 B.R. 250, 253 (Bankr.M.D.Tenn.1985), the debtor was found to be "savvy in financial affairs," with 30 years experience as a banker. The court concluded that the debtor's valuation of his stock in a real estate holding company as unknown was a "poorly conceived effort to disguise and conceal this substantial asset," and the listing of the stock as unknown was part of an ongoing pattern of fraudulent misrepresentations and omissions. The stock there had value, and the company owned property appraised at $900,000.00.

In *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593 (Bankr.N.D.Tex.1991), the debtor listed his stock in his business (a business supplying coin operated music machines, game machines, and cigarette machines to bars and restaurants) as having an "undetermined" value. The court found that the debtor and his attorney son knew the corporation had substantial value and they deliberately attempted to conceal the true value from the trustee. The court found the schedules "deficient" and debtor's testimony to be totally unbelievable. The debtor in *Dreyer* also made an affirmative representation to the trustee at the first meeting of creditors that the business had "no value." Here, the debtor and debtor's attorney's testimony is believable and the schedules are not deficient. Furthermore, there is no evidence that Dr. Parnes ever attempted to convince the trustee that the dental practices were valueless to him, but only that it was difficult to determine the value to a prospective purchaser without a covenant not to compete. Less than one month after the bankruptcy was filed, debtor's counsel wrote plaintiff's counsel a letter and copied the trustee with an explanation of why they could not assign a particular value to the practices.

Considering all the evidence, the Court concludes that defendant reasonably relied on the advice of counsel and acted without fraudulent intent under § 727(a)(4)(A) and § 727(a)(4)(B) when he listed the value of his one-half interest in the dental practices as "unknown" in Schedules B and C. The advice was reasonable and not given with any intent to mislead the trustee or the creditors. The objection to discharge on this basis is without merit and is denied.

■ Third, plaintiffs argue that the way in which debtor listed his one-half interest in the medical office building and adjacent land in Cartersville was fraudulent and should prevent his discharge. On Schedule A ("Real Property") as originally filed, debtor did not list these interests. However, debtor filed an amendment to Schedule A on February 6, 1996, listing these real property interests. As to the office building, he listed the total market value at $300,000.00, the total debt at $256,000.00, and the value of debtor's one-half interest at $22,000.00. As to the unimproved land, he listed the market value at $100,000.00 and the debt at $115,000.00, such that the value of his interest was $0. Plaintiffs allege defendant made a false oath when he omitted these properties from his original Schedule A.

Debtor testified that he did not list the property in Schedule A as originally filed, because he always believed the real estate to be in the name of the partnership Parnes & Parnes (Cartersville). He and his father purchased the land in 1987 and intended it to be held by the partnership. He and his father always treated the land as part of the practice. Debtor's testimony is supported by the partnership tax returns and financial statements which show the real estate to be partnership property. Furthermore, the notes on the real estate are paid by the partnership.

This real estate was disclosed in debtor's original Schedule D ("Creditors Holding Se-

cured Claims"). There, debtor had listed the mortgage obligations against the property. Mr. Goger testified that the listing of the property on Schedule D indicated their belief that the Parnes & Parnes (Cartersville) partnership owned the land, and that defendant was only a co-debtor or guarantor on the mortgage obligations, with no ownership interest in the land. When debtor's current bankruptcy counsel, Mr. Rosen, did title work and learned that the land was titled in debtor and debtor's father's names, and not in the name of the partnership, he prepared and filed the amendments to the Schedules. Debtor only learned the title was not transferred out of the individuals' names when Mr. Rosen did the title work.

A debtor's mistake or ignorance regarding the title of assets is not grounds for a denial of discharge. *North Community Bank v. Boumenot*, 106 B.R. 149, 152–53 (N.D.Ill. 1989). Plaintiffs have failed to prove that defendant's omission of the Cartersville real estate in Schedule A as originally filed was done with deliberate or fraudulent intent or that debtor had knowledge of the true facts at the time he completed his Schedules. Debtor's original error was a result of mistake or inadvertence and was corrected by amendment when it became apparent to debtor's counsel. The corrective amendment was voluntary, and was not made in response to a creditor's objection. Significantly, the debt on the land was disclosed in Schedule D. Furthermore, this real estate was fully disclosed in the divorce trial, and debtor could not have intended to conceal it by including it originally in Schedule D as opposed to Schedule A. Thus, the omission of the real estate on Schedule A as originally filed is not a basis for denying the debtor's discharge.

II. Objections Relating to a Life Insurance Policy and a Bank Account

■ Plaintiffs also object to the debtor's discharge for his failure to disclose a life insurance policy with a $902.67 cash surrender value. Debtor had an interest in a whole life policy with the Allianz Life Insurance Company of North America ("Allianz Life") with a cash surrender value of some $902.67 on the date he filed bankruptcy. In response

to Item 9 of Schedule B ("Personal Property—Interests in Insurance Policies"), debtor listed "None." Plaintiffs allege debtor made a false oath under § 727(a)(4)(A) when he failed to disclose the Allianz Life policy.

Debtor testified that he had purchased the policy when he was a student at the University of Georgia. Because he paid only $61.55 per quarter, he believed the policy was a term life policy with no cash surrender value. The quarterly billing statements do not indicate whether the policy is a whole life policy or a term life policy, and they do not show a cash surrender value. Plaintiffs introduced an annual statement for the policy year ending June 4, 1994 indicating that the policy had a cash value of $902.67. However, debtor credibly testified that while he probably received the annual statement in June of 1994, he did not know the policy had a cash surrender value until a week before this trial. The Court concludes that debtor was mistaken about the nature of the Allianz Life policy and was not aware that it had a small cash surrender value at the time the petition was filed. The Court does not find that debtor was attempting to hide or conceal an asset when he omitted the policy from Schedule B.

■ A discharge may not be denied for misstatements or omissions in the debtor's Schedules that are the result of honest mistakes or inadvertence. *Beaubouef*, 966 F.2d at 178; *Bodenstein*, 168 B.R. at 32; *Buck*, 166 B.R. at 108. Defendant testified credibly that he was mistaken about the nature of the policy and whether it had any cash surrender value. Plaintiffs have failed to prove any fraudulent intent on the defendant's part when he omitted the Allianz Life policy. *See Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 350 (Bankr.E.D.N.Y.1992).

■ Plaintiffs next allege that debtor knowingly and fraudulently understated the balance in a checking account in his Schedules and that debtor used the unreported amount to pay personal obligations. Debtor contends that he listed the balance that appeared in his check register when he completed the Schedules, and that the outstanding checks as of the petition date, April 12, 1995, were checks written to plaintiff Mrs. Parnes for alimony and child support.

Debtor's Schedule B ("Personal Property") and Schedule C ("Property Claimed As Exempt") list a checking account at the First Community Bank with debtor's interest valued at $375.00.[2] The bank statement for the account on April 11, 1995 shows a balance of $2,085.66. Debtor credibly testified that he had written two (2) checks totaling $1,950.00 to his ex-wife, plaintiff Melody Parnes, prior to filing the petition, to cover alimony and child support payments due on April 15, 1995. While the two checks were dated April 15, 1995, debtor credibly testified that he had written the checks and deducted them in his check register before the petition was filed on April 12, 1995. Debtor testified that he gave the checks to his dental office staff to mail sometime before April 12, 1995.

Melody Parnes attempted to show that these checks were written and sent to her after the bankruptcy by identifying an envelope, postmarked April 16, 1995, as the envelope in which she received the two checks in question. However, the reverse sides of the checks indicate they were deposited by Mrs. Parnes on April 16, 1995. It is unlikely that the checks were both mailed and received on the same day, and debtor's explanation that the envelope contained other correspondence is more plausible.

The Court finds that debtor reported in his Schedules what he believed to be the correct account balance at First Community Bank as of April 12, 1995, based on his check register. The facts here do not amount to a fraudulent intent to conceal or a knowing and intentional false oath. The correct account balance here is not material and there is no evidence to suggest why the debtor would not have disclosed court ordered payments of alimony and child support to his ex-wife, one of the plaintiffs here.

Debtors frequently rely on the balances recorded in their check registers when preparing their Schedules. The use of check register amounts is to be expected and is not in and of itself fraudulent. *See Garcia v. Coombs (In re Coombs),* 193 B.R. 557, 562, 566 (Bankr.S.D.Cal.1996); *In re Figueira,*

163 B.R. 192, 196 (Bankr.D.Kan.1993); *Thomson McKinnon Securities, Inc. v. Hiegel (In re Hiegel),* 117 B.R. 655, 659–60 (Bankr.D.Kan.1990). Plaintiffs have failed to prove that debtor intended to hinder, delay, or defraud creditors or the estate when he reported the balance in his checking account.

## III. Objections Relating to Debtor's Claim of Exemptions

The remaining objections to discharge relate to debtor's Schedule C ("Property Claimed As Exempt"). The facts relating to the debtor's claim of exemptions, the objections to the exemptions, and the resolution of those objections are important in understanding plaintiffs' argument and debtor's response.

Debtor filed his schedules, including his list of exempt property, with his petition. Section 522(1) of the Bankruptcy Code provides that unless a party in interest objects, the property claimed as exempt on such list is exempt. Bankruptcy Rule 4003(b) sets a deadline for the trustee or any creditor to file objections to the claimed exemptions. The deadline is 30 days after the conclusion of the first meeting of creditors or the filing of any amendment to the list, unless further time is granted by the court. The first meeting of creditors in this case was held on May 17, 1995. Well within the deadline set by Bankruptcy Rule 4003(b), the trustee, the debtor's ex-wife, and another creditor filed objections to debtor's claim of exemptions.

Plaintiff Melody Parnes objected to debtor's exemption of his dental practices, and she objected to the remaining exemptions, arguing that the value of the property claimed as exempt exceeded the value permitted by Georgia law. The trustee filed a similar objection and specifically objected to the exemptions of the dental practices, an anticipated tax refund of $25,000.00, money in two (2) checking accounts, and three (3) retirement accounts. In addition, the trustee objected to debtor's attempt to exempt $7,500.00 in household goods, arguing that

---

**2.** In plaintiffs' opening statement, counsel stated that debtor understated the amount in another checking account at Wachovia Bank by some $380.00. However, plaintiffs did not introduce any evidence on this point.

only $3,000.00 worth of household goods and furnishings was available. A creditor, Paul Kohler, debtor's former divorce lawyer, filed an objection similar to that filed by the trustee.

All three objections to debtor's exemptions were scheduled for hearing on July 20, 1995. The parties requested a continuation of the hearing, and the Court rescheduled the hearing for August 16, 1995. Prior to that hearing, counsel advised the Court that they had resolved all the objections and would be submitting a consent order.

The Consent Order was submitted and signed by the trustee, counsel for plaintiff Mrs. Parnes, counsel for the debtor, and counsel for Paul Kohler. This Consent Order, entered August 23, 1995, required debtor to surrender retirement accounts at Interstate/Johnson Lane and Fidelity Investments to the trustee and allowed debtor to claim as exempt the retirement account maintained at Bartow County Bank. With respect to the anticipated tax refund, the Consent Order required debtor to turn over checks for refunds from 1994 income taxes. Regarding the three dental practices, the parties agreed that the trustee would have a right to claim whatever interest debtor had at the time of the petition. The parties agreed that debtor could exempt cash in hand of $100.00, the two checking accounts, and household furnishings in the amount of $3,500.00. Debtor's exemptions with respect to any other items were denied.

Plaintiffs argue that debtor purposely claimed exemptions in Schedule C far in excess of what could be allowed, with the hope that no one would object and that he would be able to keep all of his property. In essence, plaintiffs argue that given the short deadline creditors have for objecting to exemptions, a debtor ought not receive a discharge if there is not a reasonable basis to support the claim of exemptions. Plaintiffs contend that an overstated exemption amounts to the presentation of a false oath under § 727(a)(4)(A) and a false claim under § 727(a)(4)(B). The argument is based on *dicta* in the Supreme Court case of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

In *Taylor v. Freeland & Kronz*, the Supreme Court held that the trustee could not contest the validity of an exemption after the deadline in Bankruptcy Rule 4003, even if the debtor had no colorable basis for claiming the exemption. There, the trustee had decided not to object to a claim of exemption for monies debtor expected to win in a discrimination lawsuit. When debtor settled the lawsuit and signed a check for $71,000.00 over to her attorneys for their fees, the trustee demanded a turnover of the fees from the lawyers. The lawyers successfully argued they could keep the fees, because debtor had claimed the proceeds of the lawsuit as exempt. The Supreme Court addressed the trustee's concern that § 522(1) created improper incentives and would cause debtors to claim non-exempt property as exempt on the chance that the trustee would fail to object on time, by stating as follows:

> Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. *See, e.g.,* 11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Rule 9011 (authorizing sanctions for signing certain documents not "well-grounded in fact and ... warranted by existing law or good faith argument for the extension, modification, or reversal of existing law"); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases). *These provisions may limit bad faith claims of exemptions by debtors. To the extent that they do not, Congress may enact comparable provisions to address the difficulties that Taylor predicts will follow our decision.* We have no authority to limit the application of § 522(1) to exemptions claimed in good faith.

*Id.* at 644–45, 112 S.Ct. at 1648–49 (emphasis added). The Supreme Court did not hold that § 727(a)(4)(B) applies to overstated claims of exemptions. It stated in *dicta* that § 727(a)(4)(B) *may* limit bad faith exemption claims and, to the extent that it and other rules did not, Congress could pass new laws.

The Eleventh Circuit case of *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir.1994), cited by plaintiffs, does not support plaintiffs' argument. *Allen v. Green* involved facts very similar to the facts in *Taylor*, and the court, following *Taylor*, allowed the debtor to keep the entire settlement fund from a lawsuit, because the trustee did not object to the claim of exemption on time. The case did not involve a complaint under § 727(a)(4)(B), and the Eleventh Circuit did not address whether the debtor's claim of exemption would affect her discharge. The Court simply repeated the *dicta* in *Taylor* as a means of addressing the disappointed creditor's argument that debtors will be encouraged to file improper exemptions, if the deadline in Rule 4003 is enforced.

There are several reasons why debtor's claim of exemptions here should not bar his discharge under § 727(a)(4)(B). When the Supreme Court in *Taylor* suggested possible statutes and rules that *might* apply to alleviate the trustee's concern that the short time deadline for objecting to exemptions would lead to overstated exemptions, it did so in the context of a case where the trustee failed to file a timely objection to the exemption. The result there was that the debtor and her attorneys were permitted to retain non-exempt property. In the case at bar, the trustee and the creditors did file timely exemptions. Thus, the procedure envisioned by § 522(1) and Bankruptcy Rule 4003 worked here. Timely objections were filed, and all the objections were resolved in the Consent Order entered on August 23, 1995. Debtor has not been permitted to retain non-exempt property.

In addition, as a practical matter, the suggestion that the harshness of the deadline in Rule 4003 might be ameliorated by denying a discharge to a debtor under § 727(a) is not well taken. The deadline for filing a complaint under § 727(a) is found in Bankruptcy Rule 4004(a). In reality, the deadlines in Rule 4003(b) and Rule 4004(a) are not that different. The time deadline for objecting to a discharge in Bankruptcy Rule 4004(a) is 60 days after the first meeting of creditors *is first scheduled*. The deadline for objecting to exemptions in Rule 4003(b) is 30 days

after the *conclusion of the first meeting of creditors* or 30 days after any amendment to the list is filed. These time deadlines are at most 30 days apart. In many cases, however, the first meeting of creditors will not be concluded on the date it is first scheduled, it will be reset for some reason, or there will be amendments filed. Thus, in a great many cases, the deadline in Rule 4004(a) will pass before the deadline in Rule 4003(b) such that a trustee or creditor who sits on his rights and fails to file an objection to exemptions is very likely to have lost the right to object to the discharge.

Cases involving allegations of a false claim under § 727(a)(4)(B) generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim. In *Garcia v. Garcia (In re Garcia)*, 168 B.R. 403 (D.Ariz. 1994), the court rejected the creditor's claim that an overstated homestead exemption prevents a discharge under § 727(a)(4)(B). Holding that listing an exemption cannot be a "false claim" within the meaning of § 727(a)(4)(B), the court reasoned that the word "claim" as defined in § 101(5) of the Bankruptcy Code does not mean an "assertion," but means a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to payment." *Id.* at 407.

 Even if § 727(a)(4)(B) applies to exemptions claimed, plaintiffs' objection to discharge cannot succeed in this case. The Court finds that debtor did not have a fraudulent intent when he submitted the list of exemptions. Debtor relied on the advice of counsel in completing the Schedule of exemptions. The debtor waived the attorney-client privilege, and Mr. Goger took full responsibility for the preparation of Schedule C. Mr. Goger testified that he advised the debtor to claim as exempt the property listed in Schedule C. He testified that he explained to the debtor that he should list everything of value as exempt property to the extent it could be exempt. He told the debtor that there were both dollar and categorical limitations on exemptions, but exemptions should be claimed on all categories of items that could be exempted.

As to the scheduling of "Anticipated Tax Refund $25,000.00," Mr. Goger testified that he understood there was some dispute between debtor and his wife about who was entitled to the tax refund. He wanted to be sure that debtor would be allowed to exempt any interest in the refund he might have. He explained to the debtor that if one exempts an item in excess of the amount one is entitled to, one does not get the full exemption. However, if one fails to list it, even the exemptible portion cannot be exempted. In a previous portion of this opinion, the Court concluded that listing the debtor's interest in the dental practices with an unknown value was not done with any fraudulent intent. Mr. Goger told the debtor that if in fact the dental practices had some dollar value, debtor would have to assign some part of his exempt allowance to the practices or pay it to creditors. Mr. Goger advised the debtor to schedule all the retirement accounts on Schedule C. He was uncertain as to the precise type of retirement accounts involved and advised the debtor to schedule them so that he could retain them if they were exempt. He told the debtor that retirement accounts are routinely examined by bankruptcy trustees and may or may not qualify as exempt property.

Plaintiffs argue that an overstated exemption amounts to a false oath and a false claim and that reliance on counsel is no excuse. However, § 727(a)(4) requires a debtor to have "knowingly and fraudulently" presented or used a false oath or claim. Debtor's reliance on the advice of counsel leads the Court to conclude that the debtor did not have the necessary fraudulent intent in presenting his claim of exemptions.

Plaintiffs argue that Mr. Goger's advice was unreasonable and have suggested that there is a requirement of reasonable reliance in order to raise advice of counsel as a defense to a claim under § 727(a)(4). Whether a debtor must prove reasonable reliance in asserting reliance on counsel in a § 727(a)(4) action is not settled in the case law. In a recent article, Professor Gregory E. Maggs

considered the historical and present day treatment of the "reliance on advice of counsel" argument in bankruptcy cases and persuasively argues that advice of counsel should not be treated as an affirmative defense, but should be viewed as evidence of the debtor's knowledge or intention. Gregory E. Maggs, *Consumer Bankruptcy Fraud and the "Reliance on Advice of Counsel" Argument*, 69 Am.Bankr.L.J. 1 (1995). Professor Maggs argues that requiring a showing of reasonableness with its objective standard creates a doctrine with requirements not found in the statutory language of § 727 and not related to the particular debtor's state of mind. The Court agrees that reasonable reliance is not a required element of proof, but goes to the debtor's credibility. *Id.* at 24.

Debtor's reliance on Mr. Goger's advice in preparing the Schedule of exemptions was reasonable. What qualifies as exempt property and what should be claimed as exempt are subjects on which lawyers typically give advice in bankruptcy cases. The substantive law of exemptions is very complicated. "Hardly a debtor is aware of it or understands it." *In re Calzadilla*, 151 B.R. 622, 626 (Bankr.S.D.Fla.1993). The reasonableness of debtor's reliance in this case is easily distinguished from cases where debtors did not reasonably rely on the advice of counsel when omitting an asset from the schedules. *See Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir.1987); *In re Mascolo*, 505 F.2d 274, 277 (1st Cir.1974); *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948, 960 (Bankr.N.D.Ind.1988). Here, debtor hired competent counsel and reasonably relied on the advice of counsel in an area of law where laymen typically rely on advice of counsel.[3] This negates any finding of knowing and fraudulent intent on the part of the debtor in presenting his claim of exemptions.

Mr. Goger's advice was not given with the intent to trick or defraud the trustee or creditors. Mr. Goger explained why he advised the debtor to claim everything that

---

**3.** It is worth noting that while the advice on the retirement accounts turns out to have been incorrect at the time it was given, counsel appear

to agree that the law has changed and now the retirement accounts would be exempt.

could possibly be allowed as exempt. First, he testified that he prepared the Schedules in such a way as to invite the trustee's scrutiny by listing the value of the dental practices as unknown and by listing the retirement accounts. Second, he testified credibly that he did not practice law in the manner suggested by plaintiffs' counsel. In his practice, Mr. Goger did not use the 30–day deadline in Rule 4003(b) to trick trustees, and attorneys did not use the deadline to trick him when he served as a trustee. He explained that his practice was to resolve objections to exemptions by reference to the law of exemptions. He testified that he advised the debtor that he would only get to keep that which was determined to be exemptible by category and by amount. In fact, this is precisely what occurred. Contrary to plaintiffs' suggestion, there is simply no indication that Mr. Goger ever advised the debtor that he should over-claim exemptions so that if the trustee failed to object within 30 days, he would get to keep everything.[4]

Finally, plaintiffs introduced some evidence of a dispute that arose between the trustee and the debtor days before this trial regarding the tax refunds. The Consent Order on debtor's exemptions provided as follows:

> The Debtor is directed to turn over to the Trustee, upon receipt thereof, any checks representing refunds or reimbursements from the United States government or the State of Georgia for the Debtor's 1994 income taxes.

(8/23/95 Order ¶ 2.) In debtor's 1994 federal income tax return dated September 6, 1995, debtor requested that a $5,601.00 refund be applied to his first quarter 1995 estimated tax. Debtor also requested that a refund of approximately $1,000.00 be applied to his first quarter 1995 estimated Georgia state income tax. The parties alerted the Court to a possible dispute and claim by the trustee, but the trustee and the debtor have not filed any pleadings addressing the matter. Plaintiffs' claim that this dispute should result in a denial of debtor's discharge is denied, without prejudice to the trustee's right to file a claim for turnover, if appropriate.

## IV. Conclusion

In accordance with the above reasoning, plaintiffs' objections to the debtor's discharge are DENIED. Trials on plaintiffs' § 523 claims objecting to the dischargeability of their particular debts will be set by separate Order and Notice.

IT IS SO ORDERED.

---

4. Debtor's counsel also argues that plaintiffs' legal theory puts debtor's counsel in an untenable situation. The argument goes like this. Debtors have a short time period in which to file a list of exemptions. If the exemptions are not claimed, they are lost. If some exemptions are disallowed, a debtor will want to have listed other items so that he can obtain the maximum exemption. If claiming too much subjects a debtor to the risk of losing the discharge, then a debtor's lawyer is in danger of committing malpractice no matter what advice he gives. If he advises the debtor to claim exemptions that are disallowed, he runs the risk of the debtor being denied a discharge. If he advises the debtor to make a minimum exemption claim, he runs the risk that the debtor will not be able to retain all that he is entitled to retain. Plaintiffs have not responded to this point.