**In re Malcolm P. DULOCK, Debtor.**

**Laura Hunerwadel, f/k/a Laura H. Dulock, Plaintiff,**

**v.**

**Malcolm P. Dulock, Defendant.**

**Bankruptcy No. 99–61513.**
**Adversary No. 99–6359.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 16, 2000.

George M. Geeslin, Atlanta, Georgia, for plaintiff.

William D. Matthews, Greene, Buckley, Jones & McQueen, Atlanta, Georgia, for defendant.

Herbert C. Broadfoot, II, Atlanta, Georgia, Chapter 7 Trustee.

Jeneane Treace, United States Trustee's Office, Atlanta, GA, United States Trustee.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This matter is before the Court on a motion for summary judgment filed by defendant Malcolm P. Dulock (the "debtor"). The plaintiff Laura Hunerwadel is the debtor's ex-wife. In this complaint, Ms. Hunerwadel has objected to debtor's discharge under 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4).[1] This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

In the summary judgment motion, debtor contends that the undisputed facts show that he has not engaged in any behavior that violates § 727(a)(2) or § 727(a)(4) of the Bankruptcy Code. In support of the motion, debtor filed a statement of material facts which he contends are undisputed and an affidavit. Plaintiff filed a response along with two affidavits: an affidavit by the plaintiff and an affidavit by a friend, Irma Pearigen. Plaintiff also filed a response to the defendant's numbered statement of material facts, but plaintiff took the position that she need not answer the statements numbered 54 through 73. On May 3, 2000, the Court entered an Order directing plaintiff's counsel to file a proper response to defendant's numbered material facts 54 through 73 within ten days, or the facts would be deemed admitted. On May 11, 2000, plaintiff filed a supplemental response to debtor's statement of material facts. After carefully reviewing the briefs, statements of facts and affidavits filed by the parties, the Court concludes that defendant's motion should be GRANTED in part and DENIED in part.

The debtor, Dr. Malcolm P. Dulock, is a 57-year-old doctor. The plaintiff, Laura Hunerwadel, is approximately 37 years old and is the debtor's ex-wife. The debtor and the plaintiff are the parents of one minor child, Alexander, who was five years old at the time the bankruptcy was filed. The parties were first married in May of 1992, and were divorced less than three years later, on January 5, 1995. They remarried eleven months later, in November of 1995, in a ceremony in Las Vegas, Nevada. They were then divorced for a second time in February of 1998.

Dr. Dulock filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code on January 29, 1999, a little less than a year after the second divorce. He converted his case to a case under Chapter 7 one month later, on February 26, 1999. He filed the Statement of Financial Affairs and schedules of assets and liabilities on February 26, 1999.

There is a great deal of anger and distrust between the parties. The second divorce decree awarded the parties joint custody of Alexander, and Ms. Hunerwadel had primary physical custody. In subsequent litigation in the Superior Court of Cobb County, debtor was awarded primary custody of Alexander.[2] The evidence offered by Ms. Hunerwadel in opposition to the summary judgment motion consists largely of three partial transcripts of tape recordings she made of conversations between her and the debtor, and two reports by private investigators hired by Ms. Hunerwadel's attorneys. These materials raise some questions, preventing summary judgment on some of the claims. However, plaintiff has admitted or failed to respond to a number of facts or arguments

---

1. In a related adversary proceeding, Adversary Proceeding No. 99–6252, Ms. Hunerwadel has filed a complaint objecting to the dischargeability of certain debts pursuant to 11 U.S.C. § 523(a)(5) and (a)(15).

2. Plaintiff has stated that she has appealed the Order awarding primary physical custody to the debtor.

presented by the debtor, making summary judgment in favor of the defendant appropriate on other claims.

Plaintiff objects to debtor's discharge under 11 U.S.C. §§ 727(a)(2) and (a)(4). Section 727(a)(2) provides:

The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property to the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

■ A claim arising under § 727(a)(2) has two elements: (1) a transfer or concealment of property of the debtor or the estate and (2) an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor). *Rosen v. Bezner*, 996 F.2d 1527, 1532 (3d Cir.1993); *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 713 (Bankr.N.D.Ga.1996). The improper act can occur either during the one year preceding the petition or post-petition. *Parnes*, 200 B.R. at 713.

■ A creditor objecting to discharge under § 727(a)(2) must establish that the debtor possessed an actual intent to defraud at the time of the transfer or concealment of either the debtor's or the estate's property. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 306 (11th Cir.1994); *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1452 (11th Cir.1994); *Parnes*, 200 B.R. at 713. Constructive fraud is insufficient. *Miller*, 39 F.3d at 306. However, actual fraudulent intent may be inferred from the circumstances surrounding the transfer or concealment.

■ Section 727(a)(4) provides as follows:

The court shall grant the debtor a discharge, unless—

. . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

. . .

To justify the denial of a discharge under § 727(a)(4)(A), the false oath must be both (1) fraudulent and (2) material. *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir.1991).

■ Deliberate omissions from the schedules may constitute false oaths and result in the denial of a discharge. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 n. 3 (11th Cir.1984); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992). The plaintiff must demonstrate actual, not constructive fraud, *Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir.1993), but since defendants will rarely admit their fraudulent intent, actual intent may be inferred from circumstantial evidence. *Ingersoll v. Kriseman (In re Ingersoll)*, 124 B.R. 116, 123 (M.D.Fla.1991); *Butler v. Ingle (In re Ingle)*, 70 B.R. 979, 983 (Bankr.E.D.N.C. 1987). A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. *Beaubouef*, 966 F.2d at 178; *Buck v. Buck (In re Buck)*, 166 B.R. 106, 109 (Bankr.M.D.Tenn.1993); *Kalvin v. Clawson (In re Clawson)*, 119 B.R. 851, 852–53 (Bankr.M.D.Fla.1990). However, the discharge may not be denied when the untruth was the result of a mistake or inadvertence. *Beaubouef*, 966 F.2d at 178; *First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 32 (Bankr. E.D.N.Y.1994); *Buck*, 166 B.R. at 108; *Clawson*, 119 B.R. at 852.

■ The false oath must also be material. *Swicegood v. Ginn*, 924 F.2d at 232. A misrepresentation is material if it

bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of property. *Chalik,* 748 F.2d at 618. Detriment to creditors need not be shown, *Chalik,* 748 F.2d at 618; *Ingersoll,* 124 B.R. at 123, and the debtor may not defend himself by claiming the assets omitted were worthless, *Chalik,* 748 F.2d at 618; *Beaubouef,* 966 F.2d at 178; *Job v. Calder (In re Calder),* 907 F.2d 953, 955 (10th Cir.1990). Creditors are entitled to judge for themselves what will benefit or prejudice them. *Chalik,* 748 F.2d at 618; *Beaubouef,* 966 F.2d at 178. However, a demonstration that a misstatement is material is insufficient in and of itself to deny a discharge. The misstatement or omission must be made with the requisite fraudulent intent, and the size of the error may bear on whether intent exists. *Bensenville Community Ctr. Union v. Bailey (In re Bailey),* 147 B.R. 157, 164 (Bankr.N.D.Ill. 1992); *United States v. Ayala (In re Ayala),* 107 B.R. 271, 275 (Bankr.E.D.Cal. 1989).

 The plaintiff in an action under § 11 U.S.C. 727 bears the burden of proving that the debtor is not entitled to a discharge. Fed.R.Bankr.P. 4005. The plaintiff must prove its case by a preponderance of the evidence. *Beaubouef,* 966 F.2d at 178; *First Nat'l Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156, 1157 (10th Cir.1991); *see also Grogan v. Garner,* 498 U.S. 279, 289, 111 S.Ct. 654, 660–61, 112 L.Ed.2d 755 (1991).

 Since a general discharge facilitates a debtor's "fresh start," one of the primary purposes of bankruptcy law, the discharge provisions must be construed liberally in favor of the debtor and strictly against the objecting creditor. *Love v. Tower Loan of Miss., Inc. (In re Love),* 577 F.2d 344, 349 (5th Cir.1978); *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir.1986). The grounds for denial of discharge must be proven specifically, and the proof must be directed at the transfer or concealment alleged. A debtor should not be denied a discharge on "general equitable considerations." *Rice v. Matthews,* 342 F.2d 301, 304 (5th Cir.1965).

A court will only grant a summary judgment when there is "no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Courts must review affidavits, pleadings, and other evidence "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). In this case, the debtor "bears the initial burden of establishing the nonexistence of a triable fact issue." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the debtor meets this burden, the burden of production shifts to the plaintiff and she must come forward with sufficient evidence to prove each and every element of the claim. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987).

Plaintiff objects to debtor's discharge under § 727(a)(2), alleging that the debtor transferred, removed or concealed property with fraudulent intent or with the intent to hinder, delay or defraud a creditor. Plaintiff alleges that two transfers or concealments took place in the one year before the petition was filed: (1) debtor's use of a tax refund on his 1998 federal income taxes and (2) debtor's establishment of an irrevocable trust in favor of the parties' son. Plaintiff also challenges two postpetition transfers: (1) the establishment of an S.E.P. (Simplified Employee Pension Plan) in the amount of more than $11,000.00 through Wachovia Investments in April of 1999 and (2) the payment of $5,000.00 as a retainer to an attorney to establish the irrevocable trust in favor of the parties' son.

With regard to plaintiff's § 727(a)(4) claim, plaintiff asserts that a number of omissions in the Schedules and Statement of Affairs constitute material omissions

and misrepresentations of fact, such that debtor's discharge should be denied. Specifically, plaintiff alleges that the following four items were missing or misstated in the debtor's Statement of Financial Affairs filed on February 26, 1999:

(1) Debtor failed to list payments to creditors in response to Question 3(a) of his Statement of Financial Affairs, including payments to Attorney Russ King;

(2) Debtor failed to disclose in response to Question 7 of his Statement of Financial Affairs the establishment and funding of an irrevocable trust in favor of his son, Alexander;

(3) Debtor misrepresented the date he paid for debt counseling in response to Question 9 of his Statement of Financial Affairs, when he put down "July, 1998," as plaintiff contends the date was April of 1998;

(4) Debtor failed to disclose the name and address of his long-time accountant in response to Question 17(a) of his Statement of Financial Affairs.

Plaintiff also alleges that debtor failed to disclose a number of assets in "Schedule B—Personal Property." Specifically, plaintiff alleges:

(1) In response to Item 2, which asks for "Checking, Savings or Other Financial Accounts, Certificates of Deposit, or Shares in Banks, Savings and Loan, Thrift, Building and Loan, Associations or Credit Unions or Brokerage Houses," debtor listed only three accounts, when he has five other accounts which are not disclosed;

(2) In response to Item 7, which calls for "Fur and Jewelry," debtor put "None," failing to list a $2,000.00 Tag Heuer watch;

(3) In response to Item 8, which calls for "Sports and other Hobby Equipment," debtor failed to disclose that he owned gym and exercise equipment;

(4) In response to Item 9, which calls for "Interest in Insurance Policies," debtor failed to disclose that he maintained two life insurance policies through National Life of Vermont;

(5) In response to Item 17, which calls for "Other Liquidated Debts Owing Debtor, Including Tax Refunds," debtor failed to disclose that he was entitled to a tax refund of more than $27,000.00 from 1998 federal income taxes;

(6) In response to Items 26 and 27, which calls for "Office Equipment, Furnishings, and Supplies and Machinery, Fixtures, Equipment and Supplies used in Business," debtor failed to disclose that he owned medical equipment, office furniture and equipment.

## I. Post–Petition Transfers

■ Debtor is entitled to a summary judgment on plaintiff's § 727(a)(2) claims regarding debtor's post-petition transfers of (1) $5,000.00 to an attorney to establish the irrevocable trust and (2) $11,000.00 to set up an S.E.P. It is undisputed that the funds used for these transactions were debtor's post-petition earnings,[3] and the law is clear that earnings from services performed by an individual debtor after the commencement of a Chapter 7 case are not property of the estate. *See* § 541(a)(6) of the Bankruptcy Code.

## II. The Irrevocable Trust

The material facts regarding the debtor's establishment of a trust in favor of his son Alexander are also undisputed. The Divorce Decree dated February 13, 1998, and the Property Settlement dated February 5, 1998 required debtor to establish a trust fund for the parties' son Alexander. Paragraph 26 of the Divorce Decree entitled "TRUST FUND" provides as follows:

> Within ten days from the date of the execution of this Agreement, Husband shall deposit the sum of $ 15,000.00 into a Trust Account for the benefit of the minor child of the parties hereto wit: Alexander August Hunerwadel Dulock. In addition, Husband shall deposit into

---

**3.** Plaintiff admitted statements 35 and 36 of Defendant's Statement of Material Facts.

said account the minimum sum of $100.00 per month until said child graduates from high school. Such funds shall be held in trust either in a formal Trust Agreement or a Uniform Gift to Minors Account. Husband shall be the trustee and custodial manager of said funds. Said funds are to be used for the college education of the parties minor child.... To the extent that the amount of said trust funds is insufficient to pay for said child's college education, Husband shall be responsible for the payment of any and all remaining amounts due pursuant to the terms of paragraph 15 of this Agreement. In the event that any funds remain in said account after the payment of said child's college expenses or in the event that said child does not attend college, said funds remaining in the trust account shall be paid over to said child when he attains the age of twenty four years.

On or about July 24, 1998, debtor executed a trust agreement entitled "Irrevocable Trust for the Benefit of Alexander August Hunerwadel Dulock" ("Irrevocable Trust"), a copy of which was attached to defendant's summary judgment brief. "Item I" of the Trust Agreement entitled "IRREVOCABILITY" provides as follows:

> ... settlor [Malcolm Paul Dulock] shall have no right, title, or interest in, or power, privilege, or incident of ownership in regard to, any property in the Trust, and no right to alter, amend, revoke or terminate the trust or any of its provision, nor have any residuary interest in the property in the Trust whatsoever.

The sole beneficiary of the Irrevocable Trust is the parties' son Alexander. Debtor's adult son, Paul Kemper Dulock, is named as the trustee, and the Irrevocable Trust provides in Item X, entitled "NO CONTEST PROVISION," that if Alexander, the beneficiary, contests the trust, then all benefits shall accrue to the Eastern Band of Cherokee Indians. Debtor established the trust in Alexander's favor pursuant to the Divorce Decree.

■ Debtor claims he is entitled to a summary judgment on plaintiff's claims relating to this trust fund. The undisputed facts show that debtor's creation of the trust fund was not intended to hinder, delay or defraud creditors. The trust was established pursuant to the terms of the divorce decree and settlement agreement, and plaintiff's claim under § 727(a)(2) fails as a matter of law.

■ Plaintiff's claim that the omission of the trust fund from the bankruptcy papers violate § 727(a)(4) also fails. Plaintiff contends that debtor violated § 727(a)(4) when he failed to list the establishment of the trust fund in response to Question No. 7 on the Statement of Financial Affairs. Question No. 7 asks the debtor to list all gifts or charitable contributions made within one year before filing the bankruptcy, and debtor only listed "church contributions." Debtor explains that he did not consider the creation of the trust fund a gift or a charitable contribution, but considered it a requirement under the terms of the divorce decree. Furthermore, debtor presents undisputed facts showing that he did not take any actions to conceal the establishment of the trust fund from the trustee. It is undisputed that plaintiff herself was well aware of the provisions of the divorce decree. Debtor also states that he provided a copy of the divorce papers to the Chapter 7 trustee at the first meeting of creditors, if not before, and that he testified about the trust at his Rule 2004 examination in July of 1999.

In conclusion, the Court does not find any triable issues of fact with regard to the establishment or disclosure of the trust fund; the Court does not find any fraud in the creation or disclosure of the trust fund; and debtor is entitled to a summary judgment on plaintiff's § 727(a)(2) and § 727(a)(4) claims relating to the trust fund.

### III. The 1998 Tax Refund

Debtor filed his bankruptcy schedules on February 26, 1999. Schedule B requires the debtor to "list all personal property of the debtor of whatever kind" and Item 17 on Schedule B directs the debtor to list "[o]ther liquidated debts owing debtor including tax refunds." Debtor's response to Item 17 was a $100,000.00 judgment against AHC Physicians. Debtor did not disclose any tax refund for the 1998 tax year.

Debtor filed his federal income tax return for 1998 two months later, in April of 1999. Line 65 of the tax return lists $27,-034.00 as the amount of taxes the debtor overpaid. The return gives the taxpayer the choice to have the amount on Line 65 either refunded or applied to the taxpayer's 1999 estimated tax. Debtor had the full $27,034.00 applied to his 1999 estimated taxes. Debtor brought his 1998 tax return to his Rule 2004 examination on July 22, 1999, and testified that he filed a timely return, that he did have a tax refund, and that he applied it to his 1999 taxes. He never amended Schedule B to show the tax refund.

Plaintiff alleges that debtor's use of the tax refund and his failure to disclose it in Schedule B are grounds for denying the discharge under § 727(a)(2) and (a)(4). Debtor argues the facts are clear that he did not try to conceal the refund, because he brought the tax return to the July, 1999 Rule 2004 examination and testified regarding the refund. His justification for failing to list the tax refund on Item 17 in Schedule B is twofold. First, debtor asserts that at the time Schedule B was filed, his 1998 tax return had not been completed and he was unaware of any tax refund. Second, he argues that he misunderstood his obligation to report the refund, because he had always applied overpayments to the following year's tax liabilities, rather than receiving a refund. Plaintiff responds that the failure of the debtor to disclose the tax refund demonstrates a "reckless indifference to the truth" and that the application of the refund amounted to a transfer of the funds beyond the reach of creditors.

The right to a tax refund is property of the bankruptcy estate and must be disclosed. *Doan v. Hudgins (In re Doan),* 672 F.2d 831, 833 (11th Cir. 1982). Tax refunds accrued but unpaid as of the date a bankruptcy petition is filed are property of the estate, and a debtor has no right to unilaterally direct that the tax refund be used to pay future tax liabilities. *In re Lange,* 110 B.R. 907, 908–9 (Bankr.D.Minn.1990) (where debtor was personally liable to trustee for use of refund). The failure to disclose and turn over a tax refund bears "a relationship to the bankrupt's ... estate" and may constitute grounds for denial of discharge absent valid justification. *Mertz v. Rott (In re Mertz),* 955 F.2d 596, 598 (8th Cir.1992); *But see Davis v. Robinson (In re Robinson),* 152 B.R. 956, 960 (Bankr.E.D.Mo. 1993) (Court held that denial of discharge for failure to turnover tax refund which debtor disclosed at the 341 meeting was not warranted because the debtor, relying upon the advice of counsel, thought that the refund was exempt.); *O'Brien v. Terkel (In re Terkel),* 7 B.R. 801, 802 (Bankr. S.D.Fla.1980) (Court held that debtor did not conceal his tax refund and the failure to disclose and deliver the tax refund to the estate did not justify denial of discharge when the debtor, through uncontroverted evidence, established that the refund received prior to preparation of his bankruptcy schedules was used to pay ordinary living expenses.)

Based on the facts presented, the Court concludes that there are issues of fact concerning debtor's intent in using the tax refund improperly, in failing to disclose the refund in Schedule B, and in failing to amend his schedules to show the tax refund. The Court will need to observe debtor's demeanor and hear testimony regarding debtor's knowledge and understanding of his obligations in order to determine whether the requisite fraudulent

intent was present. Accordingly, summary judgment on plaintiff's objection to discharge relating to the tax refund must be denied.

## IV. Omissions in the Statement of Financial Affairs

■ Debtor is entitled to a summary judgment on plaintiff's claim that debtor misrepresented the date of payment to the law firm of Greene, Buckley, Jones & McQueen in Question 9 of his Statement of Financial Affairs. Debtor listed a $2,000.00 payment to the Greene, Buckley law firm as having been made in July, 1998, and Mrs. Hunerwadel contends it should have said "April of 1998." Debtor argues that the undisputed facts show that he did not act fraudulently when he described the payment occurring in July. The check in question, Check No. 2338, in the amount of $2,000.00, was apparently dated in April of 1998, but cleared the bank on July 8, 1998. Debtor's counsel states that the payment to the Greene, Buckley law firm was made in July, because that is when the check was deposited, when it cleared the bank, and when the Greene, Buckley law firm opened a file for the debtor. After reviewing the facts and the parties' arguments, the Court concludes that there is no indication that debtor's answer to Question 9 was fraudulent or intended to be misleading, and summary judgment in defendant's favor on this point is appropriate.

■ Debtor requests summary judgment on plaintiff's § 727(a)(4) claim that debtor failed to list payments to attorney Russell King in response to Question 3(a) of the Statement of Financial Affairs. Question 3(a) requires the debtor to list all payments on debts, aggregating more than $600.00 to any creditor, made within 90 days before bankruptcy. Debtor asserts that two payments of $5,000.00 each made to Mr. King in September and October of 1998 were made as part of a replenishing retainer agreement, not as payment for past services. However, plaintiff responds that the records produced by Mr. King show payments of some $25,000.00 to him from September, 1998 through February, 1999, which transfers should have either been disclosed as payments to creditors in response to Question 3(a) on the Statement of Financial Affairs or, if the funds were intended to be escrow accounts, then the assets should have been disclosed in Schedule B. The facts relating to these payments are not undisputed, and summary judgment on this claim cannot be granted on the current record.

■ Finally, debtor contends in his motion for summary judgment that the undisputed facts show that his failure to list his accountant in response to Question 17(a) was not fraudulent. Question 17(a) asks the debtor to list all bookkeepers and accountants who within the six years before the bankruptcy case kept or supervised the keeping of books of account and records of the debtor. Debtor left this response blank. Debtor's counsel asserts that Questions 16 through 21 in the Statement of Financial Affairs are only addressed to debtors who are corporations, partnerships or sole proprietorships. For this, he relies on the following language which precedes Questions 16–21 on his Statement:

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the two years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

Debtor argues that his attorney instructed him that he did not need to respond to Questions 16–21, and plaintiff responds that debtor's reliance on counsel's advice was not justified under the facts of this case.

■ Unfortunately, the record is not entirely clear as to what debtor's business or employment status was in the two years preceding the filing of the petition. Debtor's affidavit is silent on the subject. In Schedule I, debtor states that he has been employed for 20 months by Premier Medical Group. However, in his deposition, he stated that he was not really an employee of Premier and that he was self-employed. (Dep. at 24, 1. 2–10). A debtor attempting to justify that certain facts were not disclosed based upon his reliance on counsel's advice, must establish that the "reliance occurred in fact that the reliance was in good faith." *Barnett Bank of Tampa v. Muscatell (In re Muscatell)*, 113 B.R. 72, 74 (Bankr.M.D.Fla.1990). The Court will need to hear live testimony and have a clearer understanding of debtor's employment status in order to determine whether the debtor's reliance upon counsel's advice in not answering Question 17 was justified. Accordingly, debtor's motion for summary judgment on this claim must be denied.

### V. Other Omissions in Schedule B

Plaintiff's objection to debtor's discharge is also based on a number of other alleged omissions from Schedule B. First, plaintiff alleges in the complaint that debtor omitted five bank accounts in his response to Item 2 on Schedule B. Item 2 calls for "Checking, Savings or Other Financial Accounts, Certificates of Deposit, or Shares in Banks, Savings and Loans, Thrift, Building and Loan, and Homestead Associations, or Credit Unions, Brokerage Houses, or Cooperatives", and debtor's answer was that he had $1,000.00 in two checking accounts and one money market account. Plaintiff did not specify in the complaint what five bank accounts were omitted. Debtor's summary judgment motion relies on debtor's deposition testimony that he only had three open accounts to list, and that other bank accounts held in the joint names of the parties had been closed prior to the last divorce.

■ Plaintiff's responsive papers still do not specify any omitted bank accounts. However, plaintiff's affidavit refers to two brokerage accounts in a somewhat general fashion. In ¶ 5 of plaintiff's affidavit, she states that she believes debtor has hidden assets in something called a "Midas Fund." In his affidavit, debtor emphatically denied owning any share in a Midas Fund. In ¶ 3 of his affidavit, debtor states: "I have never before heard of the 'Midas Fund' and do not know what the 'Midas Fund' is." Debtor further asserts in ¶ 4 of his affidavit that "I have no assets, cash, investments, or interests in the 'Midas Fund.'" Debtor has met the initial burden of establishing the nonexistence of a triable fact issue. Plaintiff's only evidence is a report dated September 21, 1999, by an entity called Business Consulting and Investigations, Inc. This report was prepared for plaintiff's divorce attorney Tom Cawthorn, and it appears to involve an investigation of the debtor and a woman named Mahala Kirkpatrick. Plaintiff has not explained who Mahala Kirkpatrick is or what relevance she has to this bankruptcy case. On page 5 of this report, it states "Also using this SSN (452–68–9458) it was learned that Vincent Dulock has 87 shares of stock for Midas Fund." This one line in the "report" is not sufficient evidence to prove that debtor, not debtor's brother, owns stock in the Midas Fund. Debtor is entitled to a summary judgment on any claim that he has omitted listing an interest in a Midas Fund in violation of § 727(a)(4).

■ Plaintiff refers vaguely to one other account that she alleges should have been disclosed by the debtor. In ¶ 7 of her affidavit, she refers to a fund of approximately $40,000.00 for the debtor that is being maintained by his adult son, Kemper Dulock. Her affidavit is based on a conversation she tape recorded with the debtor after the bankruptcy filing. The debtor has not objected to plaintiff's use of these tape recordings, the debtor has not responded to plaintiff's affidavit, and the

debtor has not offered any explanation for the statements made in the tape recorded conversations. A summary judgment in debtor's favor on this claim is not possible based on the current record. If there is an account being maintained by debtor's adult son for the debtor's benefit, that account should have been disclosed in Schedule B. Counsel for the debtor is directed to confer with debtor and file any appropriate amendments within twenty (20) days.

■ Debtor also failed to list a watch in response to Item 7 of Schedule B which calls for a listing and current market value of furs and jewelry, and debtor failed to list medical equipment, and gym and exercise equipment in response to Items 8, 26 and 27 of Schedule B which respectively calls for a listing and valuation of sports and hobby equipment, office equipment, and machinery and equipment used in business. In response to all of these items (Items 7, 8, 26 and 27) debtor listed "None." Debtor's explanations are that he did not consider the watch to be jewelry, and that he could not have been trying to conceal these items, as he wore the watch to the Rule 2004 examination and that he testified about all of this property. This explanation is not sufficient to allow the Court to grant a summary judgment in debtor's favor. The Court will need to hear live testimony and observe debtor's demeanor to determine credibility and whether these omissions were fraudulent within the meaning of § 727(a)(4).

■ The final matter relates to the disclosure of insurance policies. In Item 9 of Schedule B, the debtor lists "None" for Interest in Insurance Policies. Plaintiff argues that debtor had two life insurance policies through National Life of Vermont. The debtor testified at his Rule 2004 examination that he cashed in one of these policies to fund the trust fund for the parties' son, Alexander. In debtor's affidavit, he states that the only other policy he has is a disability policy from National

Life of Vermont with no cash value, and that he was required by the divorce decree to maintain such policy in force. Plaintiff's response does not address these policies, but she states in her affidavit that debtor represented in the divorce proceedings that he had two other life insurance policies, one with Security Life Insurance Company and one with Providian Life and Accident Insurance. The affidavit says "See attachments," but the attachments are copies of the two divorce decrees which required the debtor to transfer full ownership of these policies to the plaintiff. If ownership of these policies was transferred, then there was nothing omitted in Item 9 of Schedule B and debtor would be entitled to a summary judgment on this claim. However, the record does not contain any statement as to whether these policies were conveyed. Debtor may file an affidavit within twenty (20) days regarding the ownership status of these policies, and summary judgment on this claim will be appropriate.

In accordance with the above reasoning, debtor's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Debtor is entitled to and is granted a summary judgment on all the § 727(a)(2) claims other than the claim pertaining to the 1998 tax refund. Debtor is also entitled to and is granted a summary judgment on plaintiff's § 727(a)(4) claims relating to the trust fund established for the parties' son, the claim that debtor fraudulently answered Question 9 in the Statement of Financial Affairs, and the claim that debtor failed to disclose five bank accounts and an interest in a "Midas Fund." Debtor's summary judgment motion on plaintiff's other claims must be and is hereby denied at this time.